## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### JABBOUR BROS. V. T. E. B. HARTSOOK.

September 22, 1921.

Absent, Burks, J.

1. LANDLORD AND TENANT—*Notice to Quit for Falure to Pay Rent— Payment of Rent After Expiration of Time—Case at Bar.*— A lease forbade subletting by the lessees, and provided that if rent should be in arrears, or if the lessees failed to comply with the condition of the lease, lessor might serve a notice of his intention to determine the lease, and the lease should determine ten days after such notice. In an action of unlawful detainer by the lessor the evidence showed that by mutual agreement between the lessor and lessees, entered into before the term of the demise began, the monthly rent reserved was increased, and such extra rent was in arrears and unpaid when notice was given on March 23, 1920, terminating the tenancy ten days thereafter, to-wit, on April 3, 1920, and that the lessees on April 8, 1920, tendered the rent in arrears.

   *Held:* That the tender on April 8, 1920, was too late to prevent the termination of the lease, and consequently there was no evidence before the jury to sustain a verdict for the lessees, and such verdict was plainly contrary to the evidence.

2. LANDLORD AND TENANT—*Notice to Quit—Contract Provisions Prevail.*—Where a lease provided that, if the rent shall "at any time be in arrears and unpaid," the lessor may terminate the lease at the expiration of ten days from the time of giving notice, neither the common law rules on the subject of what a landlord must do to terminate a lease because of nonpayment of rent nor the Virginia statute on the subject have any application, but the case is governed and controlled by the express contract of the parties and the action of the lessor in accordance therewith.

Error to a judgment of the Law and Chancery Court of the city of Roanoke in an action of unlawful detainer. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

This is an action of unlawful detainer instituted by the defendant in error, Hartsook, to recover of the plaintiffs in error, Jabbour Brothers, a partnership (composed of several partners whose names need not be here stated), certain storerooms located in the city of Roanoke.

The several premises were all demised by Hartsook, the lessor, to Jabbour Brothers, the lessees, by a single lease in writing, bearing date and executed November 9, 1918. The lease contained the following provisions with respect to the use of the premises, etc., namely, that the premises were "to be used for general wholesale merchandise and for no other purpose, for the term of (36) thirty-six months, to commence on the first day of May, 1919, at the rent of * * * $295.00 per month, payable in regular monthly payments of $295.00 at the office of the agent of the lessor in the city of Roanoke on the 1st day of June, 1919, and each successive month thereafter during the continuation of this lease. The above letting is upon the following terms and conditions:

"First: Lessee will without any previous demand therefor, pay the specified rent at the time, and in the manner above provided * * *."

"Second: Lessee shall not, without the written consent of the lessor, first endorsed hereon, use the said premises nor allow them to be used, for any purpose other than is herein provided, nor assign this lease, nor underlet the said premises or any part thereof, for the whole, or any part of the said term.

*    *    *    *    *    *    *    *    *    *

"Seventh: It is further agreed that if said rent shall at any time be in arrears and unpaid, or if the lessees shall fail to comply with any of the conditions of this lease, * * * lessor may cause a notice to be left on the premises, of his intention to determine the same, and at the expiration of

12

ten days from the time of leaving such notice, this lease shall absolutely determine."

There was a trial by jury which resulted in a verdict for the defendants, the lessees, Jabbour Brothers. This verdict the trial court set aside and entered judgment for the plaintiff lessor Hartsook, and the lessees have appealed.

The material evidence, conflicts in the evidence, and other pertinent matters are as follows:

Some time prior to April 22, 1919, the said lessees under-let one of the storerooms, designated in the record as "the corner room (market square)", and also alike designated as "Room No. 103 on market square," to one Constantine, to be used for a candy and fruit store, *i. e.*, for sale of candy and fruit, among other things. This subletting was in fact for a period of one year to begin on May 1, 1919. There is a conflict in the evidence as to whether the lessor, Hartsook, knew of the length of this subletting until the next February or March, but there is evidence tending to show that he knew of this prior to or on April 22, 1919, and we will regard that as a fact in the case. It is an uncontroverted fact that the lessor, Hartsook, on or before April 22, 1919, knew that Jabbour Brothers had sub-let said corner store room to Constantine and objected to this sub-letting of such room, to be used for the sale of candy and fruit, in an interview, or interviews, with one of the partners of Jabbour Brothers. On April 22, 1919, according to Hartsook's testimony, he went over to see one of the partners, whom he mentions, and said to him, "I understand that you have rented this building" (the said corner store room) "to Mr. Constantine." "And they said, 'He is a poor fellow and we haven't any goods to go in there yet, and I thought I would let him go in there until we got some goods to go in there.' And I said, 'That is not in accordance with our contract and I insist on your not putting him in.' And I went back and wrote a letter and said that, 'If you do put him

in there I am going to charge you additional rent." This letter was as follows:

"Hartsook & Cleaton,
"Real Estate—Rental Agents
"Roanoke, Va., April 22, 1919.
"Jabbour Brothers,
"Market Square, City.
"Dear Sirs:

"This is to notify you that in subrenting the corner room (Market Square) for candy and fruit store is not in accordance with our contract, as it was distinctly agreed upon to use same for merchandise in dry goods line only and I told Mr. Jibran (Jabbour) that I understood the party on the corner had rented same and that it was unsatisfactory to do so, and, by so doing I will demand an additional rent of $12.50 per month while he remains a tenant, so you will have to charge the new tenant the advance.

"This will be your sufficient notice to that effect.
Yours very truly,
"Hartsook & Cleaton,
"By T. E. B. Hartsook."

The testimony of and for the lessor, Hartsook, is silent as to whether Jabbour Brothers, on or after the receipt of this letter, consented to its stipulation for and agreed to pay the extra rent of $12.50 per month thereby demanded. Such testimony is to the effect that Jabbour Brothers never actually paid or offered actual payment of this extra rent, until the tender of their check, dated April 8, 1920, which included this accrued extra rent to April, 1920, which tender was made on April 8, 1920, as is hereinafter further mentioned.

The testimony of one of the Jabbour brothers as to what occurred on the last named subject when they received the

letter of April 22, 1919, is, so far as in point, as follows: "Mr. Hartsook brought this letter and says, 'being as you all are going to rent to this man, we must have $12.50 more for his store. * * *' I told Mr. Hartsook it would be all right. * * *"

Following this, Constantine took possession of said corner storeroom and entered upon his subtenancy on May 1, 1919.

There is other testimony of this witness in the record to the effect that his concern had a large expense in putting the corner store in condition for use, and that subsequently they did not pay the extra rent because they were asking Mr. Hartsook not to insist on it because of the said expense they had been put to and because they had been really trying to meet Mr. Hartsook's wishes and get Constantine to vacate the store and hoped to do so, but failed; and that when Mr. Hartsook rendered a bill in December, 1919, for the extra rent then accrued, the witness "assured him if that was the only penalty we would be willing to pay it;" but did not in fact then or afterwards pay it, as they were taking all the time they could get on it and hoped to get Hartsook to waive his demand for it up to the time of their receipt of the notice to vacate, presently to be mentioned.

The $295.00 monthly rent stipulated for in the original lease was promptly paid each month by the lessees and accepted by the lessor up to and including the month of March, 1920.

On the side of the lessor, Hartsook, the testimony is to the effect that he did not intend to insist on the payment of the extra rent for which he stipulated in the letter of April 22, 1919, and which the testimony for Jabbour Brothers shows they agreed to pay, if Jabbour Brothers had gotten Constantine to vacate the corner room aforesaid within a short time, and that they kept leading him along by fair prom-

ises as to getting Constantine out, and hard luck talk from time to time until December 20, 1919, when he wrote them the letter, which so far as material, is as follows:

"Hartsook & Cleaton,
"Real Estate and Rental Agents.
"Roanoke, Va., Dec. 20, 1919.
"107 Terry Building,
"Jabbour Brothers,
"Market Square, Roanoke, Va.
"Dear Sirs:

"We herewith submit a bill for extra rents of $75.00 to December 1st 1919, on corner room now occupied by George Constantine, Confectioner.

"My notice of April 22nd notifying you that the sub-renting of same to this tenant was not in accordance with the terms of your contract, which was to be used for Dry Goods business. I agreed to allow you $12.50 on account of cleaning up Koontz & Feather's room. I must insist on your complying with our contract on the building in regard to kind of business.

"Your further sub-renting No. 107 Market Square for Wholesale Fruit and Produce, which we have repeatedly demanded *by* removed and you have failed to comply, so we must insist upon the change of business in accordance as per contract and in violation of same will demand $12.50 per month rent on same as a penalty."

"Respectfully,
"Hartsook & Cleaton,
"By T. E. B. Hartsook."

(It will be noted that this letter refers to another subletting besides that to Constantine of another store room covered by the lease, but as this is not material to the discussion of the case, details of such alleged subrenting are omitted.)

Still the accrued and past due extra rent was not paid, and the matter dragged along, Constantine still remaining in the corner room, and Jabbour Brothers continued promising Hartsook to do all they could to get him out as soon as they could, when, on March 23, 1919, the following notice from the lessor was delivered to the lessees, to-wit:

"Roanoke, Virginia, March 22, 1920.

"To Jibran J. Jabbour, Raffley J. Jabbour and Abraham J. Jabbour, trading as Jabbour Brothers, Market Square and Nelson Street, Roanoke, Virginia.

"Gentlemen:

"By the terms of my lease with you dated November 9th, 1918, covering storerooms on Market Square Nos. 103, 105, 107, and on Nelson Street, Nos. 210 and 212, No. 210 Nelson Street being the room on the second floor above 212 and 214 Nelson street, it is provided that you as lessee shall not, without my written consent, use the premises nor allow them to be used for any purpose other than as provided in said lease, nor assign or underlet the premises, or any part thereof for the whole or any part of the term.

"You have repeatedly violated these conditions and terms of the lease against subletting, and on that account I have elected to terminate said lease on Saturday, April 3rd, and hereby demand that you vacate said lease premises on Saturday, April 3rd, and give me possession of same that day.

"In my letters of April 22, 1919, and December 20, 1919, I protested against the use of the corner room on Market Square by George Constantine in his confectionery business, and I also objected to the subrenting of No. 107 Market Square to the Wholesale Fruit and Produce Co., and told you that if you permitted these subtenants, which I objected to, you would have to pay $12.50 additional per month on each of them. As you have not paid the additional sum of $12.50 per month, and refused to do so, and have

insisted on violating the terms of the lease by allowing these subtenants to remain, I have also elected to terminate this lease, because of your failure to pay this additional rent, and hereby notify you that I have terminated the lease, and demand possession, as aforesaid, on April 3, 1920."

"Very truly yours,

"T. E. B. Hartsook."

On April 8, 1920, Jabbour Brothers tendered to the lessor, Hartsook, their check for the $12.50 per month unpaid and extra rent aforesaid, both on the room occupied by Constantine and No. 107 Market Square, aforesaid, claimed by the lessor, as aforesaid, to and including March, 1920, but the lessor then refused to accept payment of such rent, insisting upon the termination of the lease, per his said notice of March 22, 1920, delivered to the lessees on March 23, 1920; and the lessor, on April 14, 1920, instituted this action.

Other matters are referred to in the opinion of the court.

*A. B. Hunt*, for the plaintiffs in error.

*Woods, Chitwood, Coxe & Rogers* and *Jackson & Henson*, for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There are several assignments of error by the lessees, the plaintiffs in error, complaining of the action of the trial court in giving and refusing instructions; but as the verdict of the jury was in favor of the lessees to the full extent of their claim, if there was error in such action of the court, it will not be considered by us, as it was manifestly harmless error so far as the lessees are concerned.

The sole remaining assignment of error is that the trial court erred in setting aside the verdict of the jury and in entering judgment for the lessor, defendant in error, Hartsook. This presents the following question:

[1] 1. Was the verdict of the jury plainly wrong or without evidence to support it?

This question must be answered in the affirmative.

In view of the fact that the evidence in the case shows that by mutual agreement between the lessor and the lessees, entered into before the term of the demise began, the monthly rent reserved was increased by $12.50 per month from the beginning of the term; that such extra rent was "in arrears and unpaid" when the notice was given on March 23, 1920, so that such notice terminated the tenancy ten days thereafter, to-wit, on April 3, 1920, in accordance with the seventh clause of the lease, and the tender on April 8, 1920, of the rent in arrears, being after such termination, was too late to prevent the termination which had already occurred; and as there was no conflict in the evidence on those subjects, it seems plain to us that there was no evidence before the jury to sustain the verdict for the lessees, and that the verdict was plainly contrary to the evidence.

This being so, all the other matters in controversy in the case, concerning whether under the second clause of the lease there was a forfeiture because of the subletting, or a forfeiture because of the use of the premises for a purpose other than for a general wholesale merchandise provided for in the lease, or whether such forfeitures were waived by the lessor by his acceptance of rent prior to the giving of the notice last mentioned, and other interesting questions raised in connection with these subjects in behalf of the respective parties and the authorities cited and relied on upon those questions and subjects become immaterial and, hence, need not be dealt with in this opinion.

[2] The seventh clause of the lease provides that if the rent shall "at any time be in arrears and unpaid," the lessor may terminate the lease at the expiration of ten days from the time of giving the notice, such as was given as aforesaid. Hence, neither the common law rules on the subject of what a landlord must do to terminate a lease because of non-payment of rent, nor the statute in Virginia on the subject, have any application. The subject is governed and controlled in the case in judgment by the express contract of the parties and by the action of the lessor in accordance therewith.

We are, therefore, of opinion that there was no error in the action of the trial court in setting aside the verdict of the jury and in entering judgment for the lessor.

The judgment under review will be affirmed.

*Affirmed.*