## Staunton.

## Virginia Iron, Coal and Coke Co. et als., v. W. E. Dickenson.

### September 17, 1925.

1. Landlord and Tenant—*Tenant Employee of Landlord—Termination of Lease by Termination of Employment—Case at Bar.*—In the instant case, a lease by defendant, a mining company, to plaintiff, an employee, was by the month, but the lease was to be immediately determined upon the plaintiff's quitting the employ of the company. In addition, the landlord reserved the right to terminate the lease upon giving the tenant five days' notice. Plaintiff was no longer in the employ of defendant and had received a five days' notice to quit when he was dispossessed. The lease provided that upon its termination the lessor might enter and dispossess the tenant, using such force as may be necessary for that purpose.

   *Held:* That defendant under the contract had a right to dispossess plaintiff.

2. Landlord and Tenant—*Tenant Employee of Landlord—Termination of Lease by Termination of Employment.*—Where the relationship of master and servant exists, and the occupancy of the master's premises is because of this relationship, the occupant is generally considered merely as a servant and not as a tenant, and the possession is that of the master; and to render the occupation that of a servant it is not necessary that the occupation of the house be a necessary or essential incident to the service to be performed; it is enough if such occupation is covenient for the purpose of the service and was obtained by reason of the contract of hiring.

3. Landlord and Tenant—*Termination of Tenancy—Dispossession.*—The rule, supported apparently by the weight of authority, is that where the landlord has become entitled to immediate possession of the premises through expiration of the term, or otherwise, he may take such possession by force without incurring civil liability, in case no more force than is reasonably necessary is employed, and although he may be subject to punishment criminally, under statute relating to forcible entry and detainer.

4. Landlord and Tenant—*Reentry—Removal of Tenant's Goods.*—Upon termination of a lease where the landlord has effected an entry, although in the absence of the tenant, he may remove the goods of the

tenant from the premises, provided he occasion them no unnecessary damage in so doing.

5. LANDLORD AND TENANT—*Termination of Lease Determined by Contract.*—Where a contract provides when and how a lease is to be determined, neither the common-law rules on the subject of what a landlord must do to terminate the lease, nor the statute in Virginia on the subject, have any application.

6. LANDLORD AND TENANT—*Ejectment of Tenant—Malice.*—A landlord, in accordance with the lease, gave the tenant five days' notice to vacate the premises, and upon failure of the tenant to vacate in accordance with the notice, evicted him. Under the lease the landlord might have evicted the tenant two months before it did, but permitted him to occupy the premises because of his repeated promises to move out.

   *Held:* That the landlord was entirely within its rights in evicting the tenant, and that not only was there a total lack of proof of malice, but the facts of the case negatived it.

7. LANDLORD AND TENANT—*Eviction—Damage to Tenant's Furniture—Case at Bar.*—In the instant case a mining company leased a house to an employee. At the termination of the lease the mining company, as it had a right to do, evicted the tenant and removed his effects from the premises. In an action for damages by the tenant the only question at issue was whether there was any unnecessary damage done in the process of eviction—that is, whether the company used reasonable care in the removal of the plaintiff's effects from the company's premises. Practically all the evidence as to damage was directed toward alleged damage to furniture, etc., from rain and sunshine, but t was not raining when the furniture was removed from the premises, and it did not rain for two or three days thereafter. There was no testimony to show that the household goods were damaged because of ack of reasonable care in removing them.

   *Held:* That a verdict for plaintiff could not be sustained.

8. LANDLORD AND TENANT—*Eviction—Number of Vacant Houses of Landlord.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, evidence as to the number of vacant houses the company had on its premises at the time of eviction was inadmissible, the landlord being entirely within its rights in evicting plaintiff.

9. LANDLORD AND TENANT—*Eviction—Evidence—Issuance of Warrant for Un'awful Detainer.*—In the instant case, an action by a tenant against his landlord for damage to his household goods when evicted by the landlord, the court erred in allowing questions and answers as to whether a warrant for un'awful detainer had been obtained or not, as the plaintiff was evicted by virtue of a contract signed by him, under the terms of which he consented to be evicted upon the happening of events which he admits had happened.

10. Landlord and Tenant—*Eviction—Evidence—Tax Assessment.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, evidence as to the assessment for taxation of plaintiff's household goods was admissible.

11. Landlord and Tenant—*Eviction—Evidence—Crying Children.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, it was error to permit testimony that plaintiff's children cried.

12. Landlord and Tenant—*Eviction—Evidence—Expression of Opinion.*— In an action by a tenant for damage to hi. household goods when evicted by his landlord, a mining company, the court erred in permitting plaintiff's daughter to say, in response to the question, "Did your father do everything he could to take care of it?" (the furniture), "Yes, sir." This was a mere expression of opinion— a conclusion of the witness.

13. Landlord and Tenant—*Eviction—Good Faith.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, the observation of the court, in the presence of the jury, that it was material for them to consider whether plaintiff was acting in good faith in trying to get out of the house, was error, as the landlord, under his contract, was entitled to evict the tenant.

14. Landlord and Tenant—*Eviction—Evidence.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, the court erred in permitting plaintiff's wife to testify that she heard plaintiff tell the company's manager that he owed no rent, where under the contract between them the company was within its rights in evicting plaintiff.

15. Landlord and Tenant—*Eviction—Evidence—Malice.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, the court erred in allowing plaintiff's wife to testify that she thought there was malice between plaintiff and the company's manager. The company was within its rights under its contract with plaintiff, and the question of malice was not at issue.

16. Landlord and Tenant—*Eviction—Evidence that Plaintiff had Gone Off with a Camping Party.*—In an action by a tenant for damage to his household goods when evicted by his landlord, a mining company, the court did not err in excluding a statement of a witness that he had information that plaintiff had gone off with a camping party at the time of the eviction. This evidence was introduced to prove the good faith of the company. But the question of good faith was not pertinent, because there was no evidence to indicate that the company went outside of its rights under the lease.

17. Landlord and Tenant—*Eviction—Action for Damages to House-hold Goods—Case at Bar.*—In an action by a tenant for damage to his

household goods when evicted by his landlord, a mining company, the jury should not have been permitted to consider any alleged damage to the plaintiff's household goods except such as resulted from the removal thereof from the company's premises by its agents, and then only such damage as was the result of negligent handling, and the burden of showing damage and the lack of reasonable care was on the plaintiff.

Error to a judgment of the Circuit Court of Wise county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed and remanded.*

The opinion states the case.

*E. M. Fulton, D. D. Hull, Jr.*, and *Lewis A. Nuckols*, for the plaintiffs in error.

*L. P. Summers* and *H. M. Bandy*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

W. E. Dickenson, plaintiff in the court below and hereinafter so designated was, for some time prior to July, 1921, a coal miner in the employ of the Virginia Iron, Coal and Coke Company, hereinafter referred to as the company, and as an employee of the company occupied one of its houses under the terms and conditions of a written contract which bore date February 1, 1921. Omitting the formal parts and such as are unnecessary to the determination of the questions here involved, the contract provided:

"The lessor demises unto the lessee, for residence purposes only, that certain dwelling house situated at .their Laura Mines operation in Wise county, Virginia,

numbered 5, and so designated on the plans of the property of the lessor, for a period of one month from the 1st day of February, 1921, and as long as the lessee shall be in the employ of the lessor and shall perform each and all of his other covenants, herein contained, provided, however, that the lessor may terminate this lease at any time by giving the lessee five (5) days' notice of its election so to do.

" * * * that whenever this lease is terminated whether by his voluntary act or by the act of the lessor he will promptly surrender quiet and peaceable possession of said premises and it shall be lawful for the lessor, or any person or persons by it so directed, to enter upon and dispossess him and take possession of said premises, using such force as may be necessary for that purpose, and for so doing this lease and agreement shall be a sufficient warrant, authority and justification * * * ."

It will be seen that the lease under this contract, was by the month, but it was immediately determined upon the plaintiff's quitting the employ of the company. In addition, the company reserved the right to terminate the lease at any time upon giving plaintiff five days notice.

The plaintiff was discharged by the company about the middle of June, 1921, and while this severance of the relationship of employer and employee by the terms of the contract terminated the lease, nevertheless the plaintiff did not vacate the premises, and on July 18, 1921, the company gave plaintiff written notice, as provided by the contract, of its determination to terminate the lease in five days from that date. Plaintiff admits he received the notice but he failed to vacate, whereupon, on August 8, 1921, Orbin Purcell and Jake McFairen, regularly appointed county

policemen for Wise county, who are joint defendants in this action with the company, at its request and with its authority, removed plaintiff's belongings from the company's premises.

The plaintiff brought action on February 12, 1922, against the company and the officers, alleging damages to the amount of $5,000.00 to his "goods, household furniture, kitchen furniture and all other valuable property," by reason of the fact that it was moved from the leased premises while plaintiff and his wife were absent from home and was exposed to the elements, the rain and sun, for a period of three days.

In a second count to the declaration, added later, plaintiff claims damage on account of the loss of his garden, fruits and vegetables, appropriated by the company, and for the wilful wrong done him by the company in dispossessing him. Upon motion of the company a bill of particulars of the items of the alleged damage was filed by the plaintiff aggregating $2,664.91. About $1,000.00 of this alleged damage was for the loss of fruit and vegetables, but there is no proof in the record as to such loss.

Upon a plea of not guilty the issue was tried on July 12, 1923, and the jury returned a verdict of $2,000.00 for the plaintiff.

The usual motion to set aside the verdict as contrary to the law and the evidence was made and overruled by the court, and this action of the court in refusing to set aside the verdict and in entering judgment thereon was excepted to.

From the judgment so rendered, a writ of error was awarded defendants by one of the judges of this court.

There are twenty-one grounds of error assigned. Most of them, however, relate to the admission of certain evidence by the court over the objection of the company, and the granting or refusing of instructions.

The correctness or incorrectness of the ruling of the trial court upon nearly all of these questions is dependent upon whether the court properly conceived the rights of the parties under the contract. This is the primary question therefore to be determined.

[1-5] Not only do the facts show, but the contract clearly establishes the fact, that the plaintiff occupied the company's premises solely by virtue of the fact that he was an employee, and that his right to occupy the premises was determined wholly by the contract which, while its terms may appear harsh, and its strict enforcement may work a hardship, he, *sui juris* and *compos mentis*, had signed it and was bound by its terms. Thus he *knew* that when his employment by the company ceased, by the terms of his contract, his right to occupy the company's premises ceased. He *knew* that if he received five days notice to vacate his right to occupy the premises ceased, and it was his duty to vacate whether he had paid the rent provided for or whether he was willing and ready to pay it or not. He *knew* that, under the terms of his contract, if he did not vacate upon the happening of either of these events, the company had a right to remove his effects from their premises forthwith and to use such force as might be necessary for that purpose. The right of the company to dispossess him was not dependent upon whether it was convenient to the plaintiff or whether he had secured another house to move his effects into. He *knew* he was not an employee of the company and he *knew* he had received notice under the contract to vacate. Even under circumstances such as obtain here, independent of contract, the employer has a right to dispossess the servant when the relationship of master and servant ceases.

In 16 R. C. L. title, Landlord and Tenant, section 54, p. 579, the rule is thus stated:

"Frequently in connection with one's employment he is given the right to occupy a dwelling house or apartment of his employer. In such a case, if the occupancy is directly incident to the service, or is required for the necessary or better performance of the service, he is generally considered merely as a servant and not as a tenant, and the possession is that of the master; and to render the occupation that of a servant it is not necessary that the occupation of the house be a necessary or essential incident to the service to be performed; it is enough if such occupation is convenient for the purpose of the service and was obtained by reason of the contract of hiring."

In 24 Cyc. title, Landlord and Tenant, p. 1394, it is said:

"The rule, supported apparently by the weight of authority, is that where the landlord has become entitled to immediate possession of the premises through expiration of the term, or otherwise, he may take such possession by force without incurring civil liability, in case no more force than is reasonably necessary is employed, and although he may be subject to punishment criminally, under statute relating to forcible entry and detainer."

Again, on p. 1396:

"Where the landlord is entitled to the possession, he may enter the premises by force in the absence of the tenant, without incurring civil liability, in case no unnecessary injury is done.

"Where the landlord has effected an entry, although in the absence of the tenant, he may remove the goods of the tenant from the premises, provided he occasion them no unnecessary damage in so doing."

See also *Low* v. *Elwell*, 121 Mass. 309, 23 Am. Rep. 272; *Hyatt* v. *Wood*, 4 Johnson (N. Y.) 150, 4 Am.

Dec. 258; *Whitney* v. *Swett,* 22 N. H. 10, 53 Am. Dec. 228; 16 R. C. L., title, Landlord and Tenant, section 700, p. 1177.

This is the law, or at least it is the weight of authority, where the relationship of master and servant exists, and the occupancy of the master's premises is because of this relationship. In the instant case, however, the rights of the parties are determined by contract which expressly gave the company the right to take possession when the employment ceased, and to evict the plaintiff.

"Where a lease provides that, if the tenant holds over after the expiration of the term, the landlord may enter and take possession of the premises, using all necessary force to obtain the actual possession thereof, which should not be regarded as a trespass, nor sued for as such, nor in any wise be considered unlawful, the landlord may forcibly expel the tenant upon the termination of the tenancy, using no more force than is necessary, and will not be liable therefor, such a condition in the lease being valid." 16 R. C. L., title Landlord and Tenant, section 701, p. 1179.

In *Jabbour Bros.* v. *Hartsook,* 131 Va. 176, 108 S. E. 684, this court said:

"The seventh clause of the lease provides that if the rent shall 'at any time be in arrears and unpaid,' the lessor may terminate the lease at the expiration of ten days from the time of giving the notice, such as was given aforesaid. Hence neither the common law rules on the subject of what a landlord must do to terminate a lease because of nonpayment of rent, nor the statute in Virginia on the subject, have any application. The subject is governed and controlled in the case in judgment by the express contract of the parties and by the action of the lessor in accordance therewith."

[6] It thus appears that the company was entirely within its rights in evicting the plaintiff when it did; that the contract fixed the rights of the parties. Much is said in the record about malice, but there is not only a total lack of proof of malice, but the facts of the case negative it. The company, under the contract, had a right to evict the plaintiff shortly after the middle of June when he ceased to be an employee, and yet it permitted him to occupy the premises for nearly two months thereafter, because of his repeated promises to move out, until finally on the 18th of July plaintiff was given a written notice, strictly according to the contract, to vacate in five days. He failed to heed this notice and on the 6th of August he was given an ultimatum that if he did not remove his effects from the company's premises on the following Monday, August 8th, the company would evict him. He moved one load on Monday but did not return for another that day and the record shows he had no definite intention as to when he would complete the job. He cannot now be heard to complain because the company finally pursued a course it had a right to pursue two months before.

[7] The only open question therefore in the trial of this case in the court below was whether there was any unnecessary damage done in the process of eviction, that is, whether the company used reasonable care in the removal of the plaintiff's effects from the company's premises. This question has never been passed on because it has never been properly submitted to the jury. Practically all the testimony in the record as to damage is directed toward alleged damage to furniture, bedding, etc., from rain and sunshine, but not only does the record establish beyond question, and without conflict, that it was not raining when the plaintiff's

goods were removed from the company's premises, but it fails to show that rain was threatening, and it affirmatively shows that it did not rain for from two to three days thereafter, and that practically all, if not all weather damage done was because the plaintiff left his effects out in the rain for three days after he had moved them to Sutherland, where he had engaged work and living quarters. There is some testimony that it was misty the night following the removal, but if it was, there was no testimony to indicate that the goods were damaged thereby, and even if they were the company was not responsible under the facts of this case as set out heretofore.

The testimony of both the plaintiff and his wife is so evasive and uncertain that it is almost impossible to say whether any of the household goods were damaged because of a lack of reasonable care in removing them. They do testify that the stove was broken; that some chinaware was broken; that a mattress was torn, and that some of the mattresses and bed-clothing were covered with soot, and Mrs. Hubble testified that the officers and their helpers handled the furniture "awful rough."

Having regard to the rights of the parties as fixed by the contract, and to the facts as heretofore set out, we think little more than a bare statement of the several grounds of error, twenty-one in number, in most instances, will indicate which are well taken.

The several grounds will be numbered here as they appear in the petition, and where there is a repetition such grounds will be grouped together.

[8] (1), (4) and (7). The court erred in permitting the plaintiff to testify as to the number of vacant houses the company had on its premises August 8, 1921.

It is clear that this evidence was irrelevant and immaterial and that its introduction was prejudicial. The plaintiff's right to occupy the company's premises was at an end by virtue of the terms of a contract he had signed, and it was not legally bound to furnish him shelter for his family or storage for his goods for a single day after his right ended, and this is true whether it owned other houses, empty at the time, or whether the plaintiff had secured other quarters or not. It was an act of charity or kindness to permit him to remain on the premises from June 15th to August 8th. It would have been a further act of kindness to have permitted him to remain until he had made all necessary arrangements to move, but there was no legal obligation upon the company to do so. It is obvious from this also that all references in the record to the good faith of the company with reference to their action in evicting the plaintiff, and the good faith of the plaintiff in reference to securing another house, are aside the mark.

(2) and (15). The court erred in allowing the questions and answers as to whether a warrant for unlawful detainer had been obtained or not.

[9] The action of the court in this regard was clearly erroneous also. The plaintiff was evicted by virtue of a contract, signed by him, under the terms of which he consented to be evicted upon the happening of events which he admits had happened. No warrant for his eviction under the circumstances was necessary and the introduction of any evidence as to the absence of one was erroneous and prejudicial. This is true also and for like reasons as to ground (12) as to the admission of evidence that no judgment had been obtained before the eviction. *Jabbour Bros.* v. *Hartsook,* *supra.*

[10] (3). The court erred in refusing to allow proof of the fact that plaintiff's assessment for taxation for 1921 was of one musical instrument and household and kitchen furniture, all valued at $100.00.

The value put upon the plaintiff's household goods by himself in an issue where the value of such goods is the subject of inquiry is evidence which the jury, engaged in the trial of such an issue, had a right to consider along with other evidence.

[11] (5) and (14). The court erred in permitting testimony that the children "cried."

The evidence was immaterial and threw no light on the issue.

[12] (6). The court erred in permitting the plaintiff's daughter to say, in response to the question "Did your father do everything he could to take care of it?" (the furniture) to which she replied, "Yes sir." This was a mere expression of opinion, a conclusion of the witness. The jury should have been put in possession of the facts and been permitted to draw their own conclusions. It was, in addition, immaterial to the issue.

[13] (8). The court erred as set forth in exception 9. The observation of the court, in the presence of the jury, that it was material for them to consider whether plaintiff was acting in good faith in "trying to get out of the house."

This was error as set out in discussion of ground No. 1.

[14] (9). The court erred in permitting plaintiff's wife to testify that she heard him tell Mr. Ingles, the company's manager, that he, plaintiff, owed no rent.

This exception was well taken. It was not material to the issue whether plaintiff owed rent or not, nor was it material whether there was any "feeling between the parties," the ground upon which the court stated the evidence was admitted.

[15] (10). The court erred in allowing plaintiff's wife to testify that she "thought there was malice between Mr. Ingles and Mr. Dickenson."

This statement should have been excluded.

[16] (11) and (13). These grounds relate to exclusion by the court of the statement of the witness Purcell that he had information that plaintiff had gone off with a camping outfit.

The object of the testimony was to show the good faith of the officers in evicting the plaintiff. If the ruling of the court that evidence of good faith on the part of the plaintiff in his efforts to move had been admissible, this evidence was also admissible to show the good faith of the company. It was not hearsay testimony. It was information upon which he was acting. But, as heretofore stated, the question of good faith is not pertinent under the evidence and facts of this case. There isn't a scintilla of evidence to indicate that the company went outside of its rights under the contract, and this being true its reasons and motives are not in issue.

The remaining grounds of error relate to the instructions and the motion to set the verdict aside.

The court's instructions are based upon the theory of the case upon which it proceeded to try it, which, as appears, was a clearly erroneous theory.

The following instruction was given by the court of its own motion:

"The court instructs the jury:

"Under the lease contract the defendant had the right to terminate the said lease on giving the plaintiff five days notice, and if you believe from the evidence such notice was given by the defendant to the plaintiff, then, after the expiration of said five days, the rights of lessor and lessee ceased, and if the plaintiff and his

family, or part of his family, or if the plaintiff kept his goods in said house said occupancy was unlawful; but if you believe the defendant directed his agents or employees to put the plaintiff or his family, or part thereof, and his property out of said house and said agents or employees put out of said house the family, or part thereof, and the goods recklessly and in such manner and at such a time and in such place that was reasonably calculated to destroy or damage said goods or to put said family in bodily fear, or both, and you further believe the goods were destroyed or damaged, or a part was destroyed and a part was damaged, or the family was put in bodily fear by such acts or words of said agent or employee, you will find for the plaintiff and assess his damages at such sum as you believe he is entitled to under the evidence.

"But if you believe the defendant's agents or employees did not put the plaintiff's family, or part thereof, in bodily fear, or did not put said goods out of said house in a negligent way and in such place and at such time that was not reasonably calculated to damage said goods before the plaintiff had time to care for such goods, provided this was done as soon as he could under the whole circumstances and conditions as shown by the evidence, you will find for the defendants."

To the giving of this instruction the defendant excepted.

The instruction was in conflict with the views heretofore expressed, and the exception was well taken.

The following instructions were requested by the defendant and refused by the court:

"The court instructs the jury that in no event can they find damages against the defendants in this case, unless they shall believe, from a preponderance of the evidence, that the defendants in removing the property

from the house in question, did so negligently; that is, by the failure to use reasonable care in the removal thereof into the public road or other place of storage, and then only for such damages as resulted directly from such failure to use reasonable care in such removal, if any there was.

"The court instructs the jury that it was the duty of the plaintiff forthwith to take all necessary steps, as soon as he had notice that the said goods were removed from said premises, to protect and preserve them from damage, and he cannot be excused from the performance of this duty by alleged failure to get conveyances, or an alleged failure to procure storage room, and if he did not thus take steps to protect and preserve this property, and damage resulted to the same, after it thus became his said duty, he cannot recover therefor.

"The court further instructs the jury that it became and was the duty of the plaintiff to vacate the house in question within five days from the 18th day of July, 1921, by removing himself and family and all his property from the same, and when he failed to do so the defendants had the right, at the expiration of said five days, or at any time thereafter, to remove him and his family and his said property from the same, being required to use only reasonable care in such removal, and would not be responsible to the plaintiff for any damage accruing to such property after such removal.

"The court further instructs the jury that if they believe from the evidence that any of the damage complained of to the property in question occurred by reason of the plaintiff allowing the same, or any part thereof, to remain in the rain after he removed the goods to Graden, the jury cannot find in favor of the plaintiff for any damages caused thereby.

"The court instructs the jury that the defendants are not liable in this case for any damage to plaintiff's property or any part thereof arising from the failure, if any, of the plaintiff to use reasonable care in packing, loading or transporting the same from Laura to Sutherland, or arising from his failure, if any, to use reasonable care in looking after and caring for said property after the arrival thereof at Sutherland."

These instructions fairly state the law applicable to this case and should have been given.

[17] It is clear from the foregoing that the jury should not have been permitted to consider any alleged damage to the plaintiff's household goods except such as resulted from the removal thereof from the company's premises by its agents, and then only such damage as was the result of negligent handling, and the burden of showing damage and the lack of reasonable care is on the plaintiff; and that the verdict should be set aside and the case remanded for a new trial to be had in conformity with the view herein expressed.

*Reversed and remanded.*