## GALVIN v. SOUTHERN HOTEL CORPORATION.

No. 5452.

Circuit Court of Appeals, Fourth Circuit.

April 9, 1946.

Thomas B. Gay, of Richmond, Va. (Hunton, Williams, Anderson, Gay & Moore, Lewis F. Powell, Jr., and H. Merrill Pasco, all of Richmond, Va., on the brief), for appellant.

Charles L. Kaufman, of Norfolk, Va., for appellee.

Before SOPER and DOBIE, Circuit Judges, and TIMMERMAN, District Judge.

SOPER, Circuit Judge.

By order of the District Court it was adjudged on September 20, 1945, that a lease on the Fairfax Hotel in Norfolk, Virginia, from the Southern Hotel Corporation to Hugh F. Galvin had terminated on June 28, 1944; and the lessee brings this appeal on the ground that the order of the court amounted to the forfeiture of a valuable leasehold interest at a time when the forfeiture was not necessary for the protection of the interests of the lessor and was inequitable and unjust to the lessee. The case was submitted to the District Court after a pretrial conference upon the pleadings and briefs, and the facts are not in dispute.

The lease was executed March 1, 1934, for a term of fourteen years. The lessee agreed to pay a monthly rental of $1,750 and in addition thereto a sum equal to twelve and a half per cent of the gross receipts from operations in excess of $75,000 in any one calendar year. The date on which this additional sum became due was not specified and we shall assume, as the District Judge held, that it was payable within a reasonable time after the close of any calendar year in which the gross receipts should exceed the stated sum.

The lessee also agreed to place in the hands of the lessor $20,000 in first mortgage real estate bonds to serve as security for the performance by the lessee of his covenants in the lease; and the lessor agreed to pay to the lessee four per cent interest on the bonds while they were in its hands. It was further provided that the lessee should be given a written notice of one week of any alleged breach on his part and if within another week after the notice the breach was remedied there would be no liability or recourse to the security. The lessee covenanted to keep the said bonds intact throughout the duration of the lease and to compensate the lessor for damages sustained under covenants of the lease personally and not out of the bonds which were to be a security. It was further agreed that if default should be made in any of the covenants to be performed by the lessee it should be lawful for the lessor to declare the term ended and to re-enter and take possession of the premises without prejudice to any remedies which otherwise might be used for arrears of rent or breach of the covenants. Pursuant to his covenant the lessee deposited $20,000 in bonds with the lessor, but subsequently by agreement $7,245.61 was returned leaving $12,754.39 in the hands of the lessor when the present controversy arose.

The lessee fully performed his obligations under the lease until the United States, acting through the War Shipping Administration, took possession of the hotel on December 17, 1943. This action was taken under an order of the District Court in a condemnation proceeding brought by the United States to condemn the right to use and occupy the property for one year beginning December 17, 1943. A declaration of taking was filed and $21,000 was deposited by the United States in the registry of the court as the estimated compensation for the taking. The lessor filed an answer claiming the right during the gov-

ernment's occupancy to receive the monthly rentals and also the additional rental provided by the terms of the lease. By orders of the court the right of the United States to use and possess the property for the year ending December 17, 1944, was adjudicated and the right to just compensation was decreed to vest in the persons entitled thereto, including interest at six per cent upon the amount finally awarded as the value of the leasehold in excess of the yearly rental of $21,000. During the year 1944 the United States deposited an additional $9,000 on account of the estimated value of the leasehold interest for the first year. The court directed the payment to the lessee of the sum of $846.75 for the rental for the period from December 17 to December 31, 1943, since the lessee had paid the rent for the entire month, and also directed the payment to the lessor of the balance of the sum of $21,000. Under a supplemental petition filed January 3, 1945, the right of the United States to occupy the property for an additional year ending December 17, 1945, was ordered and $30,000 was deposited in court as the estimated amount of just compensation for this taking.

On July 5, 1944, after the judgment of condemnation had been rendered the lessor filed an amended answer and a petition in the condemnation suit wherein it alleged that the lessee owed it a substantial sum of money for additional rental for the year 1943, but that the lessee had failed to pay the same notwithstanding due notice of more than one week prior to the date of the petition. It was further alleged that this default of the lessee constituted a breach of the lease and that in consequence thereof the lessor declared the lease to be terminated and cancelled in accordance with its terms. The court was asked to determine the amount of the compensation due the lessor and to render judgment accordingly.

By an answer thereto filed on June 27, 1945, the lessee admitted that he owed the lessor the sum of $9,015.17 being twelve and a half per cent of the gross receipts in excess of $75,000 derived from the operation of the hotel for the period from January 1, 1943, to December 16, 1943; but he alleged that he had repeatedly requested and authorized the lessor to pay itself this amount out of the bonds belonging to him and still in its hands, and that he had offered to guarantee to return to the lessor the full sum of $9,015.17 to be held by it as security under the terms of the lease as soon as the use and occupancy of the hotel by the United States was terminated and the property was returned to him for the remainder of the term. He declared that by reason of the government's possession he had been deprived of his only means of earning a living, that no contingency could arise during the government's occupancy which would occasion any loss to the lessor or impose any liability upon the bonds held by it as security for the performance of the lease, and that in equity and in good conscience the corporation was not entitled to a forfeiture of the lease.

This recital depicts the situation on September 20, 1945, when the court adjudged that the lease terminated on June 28, 1944. It will be seen that the lessor was amply protected at the time by the deposit of the $12,000 of bonds from all possible loss of the back rental of $9,015.17 due by the lessee for the period prior to December 17, 1943; and that the lessor was also certain to receive the rental for the period of government occupancy between December 17, 1943, and December 17, 1945. In fact the lessor was being paid the sum of $1,750 per month for that period and the additional sum of $9,000 per year, covering such additional rental as might be due under the conditional provisions of the lease, had been deposited in court to await the final decision as to the value of the lessor's interest; and if this sum should prove insufficient for the purpose, there was the credit of the United States to fall back upon. On the other hand, the lessee had been completely dispossessed of the property and deprived of his business and the revenues thereof during the period between December 17, 1943, when the United States took charge, and July 5, 1944, when the lessee filed the petition for forfeiture.

The agreement of the lessee to restore the security to the amount of $12,000 at the end of the government occupation involved some risk on the part of the lessor, and the District Judge was influenced by this circumstance in reaching his decision. He pointed out that under the lease the lessee was bound to pay the added rental within a reasonable time after the expiration of the calendar year in which it accrued and that the lessor was not obliged to compensate itself by sale of the securities, because the lessee had agreed to maintain the security at the full amount during the en-

tire term of the lease and this obligation was not met by his naked promise to restore the security when he recovered possession of the hotel.

We agree that this interpretation of the lease is correct and that therefore the lessee had not completely complied with his contract; and it is true that the lease contained provisions for forfeiture in case of the lessee's default in any covenant. But every violation of a contract containing forfeiture provisions does not necessarily require an actual forfeiture of the defaulting party's rights, and we think that in the present case especially persuasive circumstances are found for the application of the settled principle of both law and equity that contractual provisions for forfeiture are looked upon with disfavor, and will not be enforced if the result of a forfeiture will be unconscionable.

Great weight must be given in this case to the fact that the lessor was not restricted to the terms of the lease for the protection of its rights. The whole situation was completely within the control of the court. The monies on deposit were sufficient to pay the lessor a rental for 1944 and 1945 equal to that which accrued for 1943. The court was charged with the duty of ascertaining whether additional monies were due by the United States and of apportioning all sums paid by the United States between the lessor and the lessee in accordance with the terms of the lease. Moreover, the court had the power to direct the payment of the debt due the lessor by the lessee out of any monies payable to the latter for the taking; and if this amount should prove insufficient for the purpose and the lessee should fail to make good the deficiency, a complete remedy was at hand, for the court could then order the forfeiture of the lease and the lessor could sell the collateral and use the proceeds to pay the debt. In short it seems to us that as the matter lay entirely within the hands of the court the ascertainment of the sums due by the United States to the parties to the lease should have preceded the trial of the question of forfeiture. Had this been done, it might well have been found that a forfeiture of the lessee's interest was neither necessary nor desirable. In our view the forfeiture decree served only to inflict a substantial loss upon the lessee by transferring his right in the lease as of June 28, 1944, to the lessor.

The general principle that contractual provisions for forfeiture are looked upon with disfavor by the courts is applicable to contracts of lease. Such stipulations are strictly construed and when they are invoked by a landlord for nonpayment of rent, equity may relieve against them if complete justice can be done by the payment or tender of the arrears. It is recognized that payment of the rent is the object of the contract, and that the provision for forfeiture is inserted to insure this result. In Virginia, as the District Court pointed out in its opinion, it is held that a provision in a lease for termination thereof upon default in payment of rent or in default of compliance with some other covenant is valid and enforceable. Jabbour Bros. v. Hartsook, 131 Va. 176, 108 S.E. 684; Virginia Iron, Coal & Coke Co. v. Dickenson, 143 Va. 250, 129 S.E. 228. But when equitable considerations are involved, the law of Virginia is in harmony with the general equitable principles above stated. In Johnston v. Hargrove, 81 Va. 118, at pages 121, 122, it was said:

" * * * Since forfeitures are never favored in the law, it is an ancient rule of common law, that before the lessor can exercise a stipulated right of re-entry for breach of a covenant to pay rent, he must make an actual demand upon the tenant for payment thereof, unless by special agreement between the parties the requirement of demand has been dispensed with.

\* \* \* \* \* \*

"And it seems that a clause for re-entry for non-payment of rent is in general considered as a mere security for the rent, and that a forfeiture will not be enforced, although demand for the rent be made; provided, the tenant satisfies the rent due, and compensates the landlord for any damages he may have sustained in consequence of the former's default."

See also Sheets v. Selden, 7 Wall. 416, 19 L.Ed. 166; Kann v. King, 204 U.S. 43, 27 S.Ct. 213, 51 L.Ed. 360; Escher v. Harrison Securities Co., 9 Cir., 79 F.2d 777; In re Hool Realty Co., 7 Cir., 2 F.2d 334; Sixty-Third & Halsted R. Co. v. Chicago City B. & T. Co., 299 Ill.App. 297, 20 N.E. 2d 162; Blue Ridge Metal Mfg. Co. v. Proctor, 327 Pa. 424, 194 A. 559; Finkovitch v. Cline, 236 Mass. 196, 128 N.E. 12; 1 Pomeroy's Equity Jurisprudence, 5 Ed., § 453.

974

■ The situation envisioned in the last quotation from Johnston v. Hargrove, supra, exists in substance in the case before us. The offer of the bonds in answer to the demand for the balance of the rent, the certainty that the lessor would suffer no injury during government occupancy and the power of the court to secure the restoration of the security at the end of the government's term on pain of the forfeiture of the lease, all these circumstances combined to afford complete protection to every right to which the lessor was entitled under the lease. Consequently the present demand of the lessor for the forfeiture of the lease should be denied and the lessee should be given an opportunity to show what compensation, if any, he is entitled to receive from the United States for the taking of the property.

The order of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.