Nettie S. CROWE and Meletia S. Sneed,
Appellants,

v.

CHEROKEE WONDERLAND, INC.,
Appellee.

No. 10954.

United States Court of Appeals
Fourth Circuit.

Argued March 8, 1967.

Decided June 2, 1967.

Roger P. Marquis, Atty., Dept. of Justice (Edwin L. Weisl, Jr., Asst. Atty. Gen., Elizabeth Dudley, Atty., Dept. of Justice, William Medford, U. S. Atty., and William M. Styles, Asst. U. S. Atty., on brief), for appellants.

Keith McCord, Knoxville, Tenn. (Egerton, McAfee, Armistead & Davis, Knoxville, Tenn., on brief), for appellee.

Before SOBELOFF, BOREMAN and J. SPENCER BELL,* Circuit Judges.

BOREMAN, Circuit Judge.

The United States as holder of title to certain lands for the Eastern Band

---

* Judge Bell participated in the hearing and concurred in the disposition of the case but died before the opinion was prepared.

of Cherokee Indians and for individual Indians instituted this action on June 16, 1964, seeking a judgment against Cherokee Wonderland, Inc. (sometimes hereinafter Wonderland), for damages for violations of a lease dated March 10, 1960, and amendments thereto.[1] One of the items of damages was in the amount of $11,250.00 allegedly due from Wonderland for breach of the lease between it and two individual Indians, Nettie Crowe and Meletia Sneed. It was alleged in the complaint that such sum was owing to Sneed and Crowe as of January 1, 1964, "in accordance with the terms of the lease as amended by judgment of the United States District Court for the Western District of North Carolina, entered May 14, 1962." On motion of Wonderland, Crowe and Sneed were made additional parties plaintiff and Wonderland filed a counterclaim against them for $26,250.00, which sum it had paid pursuant to the consent judgment of May 14, 1962.

After a trial without a jury the district court adjudged that the lease between the United States, the individual Indians, and Wonderland was canceled because of mutual breaches. On Wonderland's counterclaim the court ordered Sneed and Crowe to return the $26,250.00 theretofore paid to them by Wonderland. This decision on the counterclaim is the sole subject of this appeal. Crowe and Sneed argue that the court erred in granting judgment for Wonderland because the consent judgment of May 14, 1962, was res judicata as to the same subject matter between the same parties and thus binding in the present action. We affirm the decision below.

For a better understanding of the matters considered by the court in reaching its ultimate decision against Sneed and Crowe on Wonderland's counterclaim, certain background facts will be briefly stated. On March 10, 1960, one H. R. Mitchell entered into a lease with twelve individual Indian lessors, including

Crowe and Sneed, the Eastern Cherokee Tribe of Indians, and the Eastern Band of Cherokee Indians. The lease was approved by all of the individual lessors, the Eastern Band of Cherokee Indians, the Superintendent of the Cherokee Indian Agency, and the Secretary of the Interior. The lease covered lands on which the lessee, Mitchell, intended to build and operate a public amusement park. In January 1961, by amendment and agreement of lessors, the lease was assigned by Mitchell to Wonderland.

Sneed and Crowe were the owners of certain improvements and a tobacco allotment on certain portions of the lands included in the lease. From the commencement of the lease period Sneed and Crowe attempted, on numerous occasions, to cancel the lease, asserting numerous violations on the part of the lessee, going so far as to complain by letter to the Commissioner of the Bureau of Indian Affairs, and the Department of the Interior. The Superintendent of the Cherokee Indian Agency wrote to the Commissioner in 1961 explaining that Sneed and Crowe caused many problems and complications, not only to the lessee but also to the individual lessors and the Superintendent. Subsequently, Wonderland instituted suit in order to settle the problems arising under the lease which were created by such interference and to enjoin further acts of harassment and obstructive tactics. The parties reached a compromise agreement and a consent judgment was entered on May 14, 1962, to carry the agreement into effect. It appeared at that time that certain improvements and a tobacco allotment on certain of the leased lands claimed by Crowe and Sneed would be destroyed by the authorized relocation of a roadway through the leased premises. It was agreed and the judgment order provided that:

" * * * Cherokee Wonderland, Inc., shall pay to Nettie S. Crowe and Meletia S. Sneed jointly the sum of $37,500.00, which shall be in full and

---

1. A judgment in the amount of $64,250.-00 for damages claimed for various violations and breaches of the lease was sought, but this appeal involves only a portion thereof as will appear infra.

complete satisfaction and accord for all their improvements and tobacco allotments on the land described in the lease * * * which said sum of $37,500.00 shall be paid as follows: $15,000.00 to be paid at the time of the filing of this judgment; $11,250.00 on or before July 1, 1963, and the balance of $11,250.00 on January 1, 1964."

Wonderland then intended to proceed with the construction of the proposed amusement facilities and other improvements and get its delayed project into profitable operation. It was further agreed, and the judgment order provided,

" * * * that none of the defendants in this action will molest or interfere with the plaintiff, Cherokee Wonderland, Inc., its agents, servants, or employees or persons, firms, or corporations acting under the terms of this contract during the construction of the project on the leased premises or in the operation of the business as contemplated by the lease. * * * "

Wonderland paid $26,250.00 to Sneed and Crowe as agreed but did not pay the final $11,250.00 which fell due on January 1, 1964. The reason assigned for the failure to make such payment was the breach of the lease by the Indian tribe and the constant harassment, threats and interference of Crowe and Sneed, including acts of physical violence, directed toward Wonderland's employees and agents. Wonderland's problems were magnified by the arrival of a new Superintendent, Jensen, who adopted a strict interpretation of the terms of the lease in contrast to the previous Superintendent's liberal interpretation.[2] As a result of constant difficulties and Wonderland's failure to continue paying rentals and for other alleged breaches of the lease by Wonderland, the United States brought this action and demanded, *inter alia*, that Sneed and Crowe be awarded $11,250.00, the amount alleged to be due them on January 1, 1964, by virtue of the terms of the consent judgment.

■ Findings of fact made by the district court sitting without a jury are presumptively correct and cannot be set aside unless clearly erroneous. Rule 52(a), F.R.Civ.P., United States v. United States Gypsum Co., 333 U.S. 364, 394–395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The court found that both parties to the contract "substantially breached the terms of the agreement," that certain of the lessors (principally Crowe and Sneed) engaged in a constant pattern of harassment, interference, assaults, threats, and general obstructive behavior which deprived Wonderland of its right to quiet and peaceful possession and enjoyment of the leased premises; that for several years after the lease was executed the lessors' representative interpreted it liberally, if not loosely, and was cooperative with Wonderland in permitting numerous major and minor adjustments in the contemplated work; that with the arrival of the new Superintendent this well-established approach to interpretation of the contract was suddenly reversed and the new Superintendent insisted upon a rigid, if not technical, interpretation of the agreement; and that this abrupt change created an impossible situation. The court further found that Wonderland was guilty of breaches of the agreement and held that the faults and breaches on the part of both the lessors and the lessee were sufficient to deny recovery of damages for violations of the agreement by either party against the other. We find evidence in the record to fully support the findings of fact.

In referring to the claim of Sneed and Crowe against Wonderland for $11,250.00, and the claim of Wonderland against

---

2. Jensen refused to recognize as valid certain amendments in writing to the original lease even though the amendments had been executed in the manner expressly authorized and approved by the terms of the original lease. Acting on behalf of Crowe and Sneed, Jensen advised Wonderland that they would not surrender the portion of the leased premises on which their improvements and tobacco allotment were located even if payment of the $11,250.00 were made.

Sneed and Crowe for $26,250.00, the trial court held:

"These claims arise out of a collateral contract made formal by the consent judgment entered May 14, 1962. Such a judgment is no more than a judicially approved contract. Armstrong v. Aetna Insurance Company, 249 N.C. 352, 106 S.E.2d 515 (1959); Houghton v. Harris, 243 N.C. 92, 89 S.E.2d 860 (1955); Spruill v. Nixon, 238 N.C. 523, 78 S.E.2d 323 (1963)."

The district court further found and stated:

"Clearly, the parties by this contract in the form of a consent judgment, sought to assure payment of compensation to Sneed and Crowe for the taking of their property, including a tobacco allotment. Just as clearly, it was contemplated that Sneed and Crowe's property would be taken and destroyed. But the latter never occurred—due in part, at least, to the fault of Sneed and Crowe. They have 'both their property and $26,250.00 of lessee's [Wonderland's] money, and are thus unjustly enriched. Since the property has not been taken, there has occurred a total failure of consideration and lessee is entitled to recover $26,250.00 paid Sneed and Crowe."

Sneed and Crowe argue that the lower court erred as a matter of law in that the consent judgment of May 14, 1962, was res judicata since it involved the same subject matter and the same parties. However, we first find it necessary to dispose of a procedural question.

▪ Res judicata is an affirmative defense which must, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, be pleaded affirmatively in order to apprise the opposing party that such a defense will be interposed at trial. In their answer to Wonderland's counterclaim, Sneed and Crowe did no more than deny generally the allegations of the counterclaim and did not plead res judicata. Rule 12(h) of the Federal Rules of Civil Procedure provides that the failure to affirmatively raise all defenses and objections, with exceptions not here applicable, constitutes a waiver thereof.

▪ Sneed and Crowe claim that while they did not plead res judicata the entry of the prior consent judgment was before the court and Wonderland was not prejudiced by their failure to plead this affirmative defense. However, there is no discussion of this point in the court's opinion. In fact, the complaint filed herein referred to "the terms of the lease as amended by judgment of the United States District Court for the Western District of North Carolina, entered May 14, 1962." We conclude that the defense of res judicata, not having been raised affirmatively below, has been waived. See 2 Moore's Federal Practice ¶ 12.23, pp. 2327–30 (2nd ed., 1965), and cases cited. Even if the defense of res judicata had been properly raised below it would not dictate the result in this case. The court concluded that the consent judgment did no more than embody and formalize an amendment of the lease agreement. Applying basic principles of contract law, the court found that there had been a failure of consideration which nullified the contract obligations of the parties; that Sneed and Crowe had retained possession of $26,250.00 which had been paid to them as consideration for the contemplated taking and destruction of certain of their property but which property was not actually taken and would not be taken; that since the lease and agreement had been canceled and they still had their property it would be unconscionable for them to retain the sum of money paid to them.

▪ We agree with the holding of the district court. The consent judgment of May 14, 1962, was no more than a judicially approved contract. The mere fact that an agreement of the parties amending a lease is incorporated into a consent judgment does not render it sacrosanct or beyond attack. See Layton v. Layton, 263 N.C. 453, 139 S.E.2d 732 (1965). In the case at bar the judicially approved agreement was an amendment

to the lease which remained in part executory. When such executory contract is sued upon in a subsequent action, as here, it is subject to all contract defenses, including nonperformance and failure of consideration. It seems equally evident that equitable remedies such as rescission and restitution should be applied where appropriate. To argue that the consent judgment, embodying an *executory* agreement in the nature of an amendment to the lease, bars any defense would seem to be entirely inconsistent with an action based upon such judgment.

The district court applied these basic principles to the case before it which was, in effect, no more and no less than an action on contract. We conclude that the decision and the resulting judgment below in favor of Wonderland should be affirmed.

Affirmed.