## Richmond

M & B CONSTRUCTION COMPANY, INC. v. ROBERT L. MITCHELL.

April 23, 1973.

Record No. 7977.

Present, All the Justices.

*Harry P. Hart (T. Brooke Howard; Murphy, Hart & O'Neill; Howard, Stevens, Lynch, Cake & Howard,* on brief), for plaintiff in error.

*Roy A. Swayze,* for defendant in error.

I'ANSON, J., delivered the opinion of the court.

Plaintiff, Robert L. Mitchell, obtained a judgment entered on a jury verdict in the sum of $26,800 against the defendant, M & B Construction Company, Inc., for breach of contract. Defendant is here on a writ of error to the judgment.

Defendant contends that the trial court erred in refusing to grant certain instructions, in allowing improper evidence to prove plaintiff's damages, and in not finding as a matter of law an accord and satisfaction.

The evidence shows that M & B Construction Company was engaged in the construction business as a subcontractor and its officers were desirous of expanding its operations into the general contracting field. On November 1, 1968, the company employed the plaintiff, who was experienced in this activity, as general manager for the company's general contracting business. The parol contract of employment provided that plaintiff would receive an annual salary of $16,000, and the company would pay one-half of his premiums for medical and hospitalization insurance, provide him with an automobile for transportation, and allow him two weeks' annual vacation with pay. In addition, plaintiff would receive 8-1/3 percent of the company's net profits before taxes for the first year of his employment, 16-2/3 percent for the second year, and 25 percent for the third and all ensuing years.

In November 1969, shortly after the company had given plaintiff his second salary increase, Kenneth Minchew, president of the company, advised plaintiff that his share in the profits of the company would be 5 percent on all contracts originating thereafter, in lieu of the previous agreement entered into with A. R. Minchew, Kenneth's father and secretary-treasurer of the company. Plaintiff neither expressly rejected nor accepted the offer, but he continued to work for the company.

In December 1969 plaintiff took his two-week vacation, after having been told by Kenneth Minchew that if he took more than one week he would not have a job when he returned. When plaintiff returned, Kenneth advised him that his employment would be terminated on January 23, 1970.

Plaintiff was tendered the company's check on January 23 in the amount of $1,000 and was told by Kenneth, "That's all you are going to get. Take it or leave it." Plaintiff stated, "I took it, but I told him I was expecting more." Plaintiff also said that there was no understanding or agreement between him and Kenneth that the $1,000 pay-

ment was satisfactory. The check was cashed on January 31 and plaintiff subsequently wrote to the company demanding payment of the additional amount he claimed was due him.

Plaintiff's evidence showed that 8-1/3 percent of the profits of the company for the first year of his employment, and 5 percent of the profits from November 1, 1969, to January 23, 1970, amounted to $26,909.35; and that one-half of the reimbursement for medical and hospitalization insurance, mileage for use of his personal automobile, and unpaid salary was $3,109.09.

Instruction A, refused by the court, would have told the jury that if they found plaintiff had disobeyed a reasonable order of the defendant, their verdict should be for the defendant.

The instruction was properly refused. Whether or not plaintiff's employment as general manager was justly terminated was not an issue in the case. He made no claim for damages for wrongful termination of the agreement before a "reasonable time" of his employment had elapsed. Here plaintiff's claim was based on his percentage of the profits of the company, and there was no contractual understanding between the parties that there would be a forfeiture of plaintiff's share of the profits upon termination of his employment. The discharge of the plaintiff did not operate as a legal forfeiture of the profits he was entitled to receive under his contractual right.

Instruction E set out an acceptable definition of accord and satisfaction, but it further told the jury that if the defendant, in November 1969, refused to grant plaintiff "8-½ percent"[1] of the net profits and defendant did agree to give plaintiff 5 percent of the net profits on contracts originating after November 1, 1969, then they should find that the November 1969 agreement was a valid accord and satisfaction which extinguished any previous agreement, and that their verdict should be for the defendant.

This instruction was also properly refused. The recitation of the facts in the finding instruction does not mention an essential element of accord and satisfaction, viz., that one party offered and the other accepted a new agreement in settlement of a disputed claim growing out of a former contract. The instruction fails to say "if the jury believes that plaintiff accepted the new arrangement in satisfaction of the profits from the first year's employment." There can be no accord and satisfaction unless there is both an offer and an acceptance. See *Virginia-Carolina Elec. Works* v. *Cooper*, 192 Va. 78, 81, 63 S.E.2d

---

1. The agreement called for 8-½ percent.

717, 719 (1951). There was no evidence that plaintiff accepted the 5 percent profit proposed for all work originating after November 1969 in satisfaction of his first year's share of the profits. Significantly, neither of the Minchews testified that plaintiff's acceptance of the 5 percent on contracts originating after November 1969 was an accord and satisfaction for the 8-1/3 percent previously agreed upon for the first year's employment.

Defendant, by counsel, argues that the trial court erred in allowing plaintiff to prove his damages by use of the "cost projection sheets" prepared by plaintiff in connection with jobs that had been awarded the company, because the amount of profit the company would receive from the contracts could not be definitely determined and the evidence was speculative and conjectural. We do not agree.

Plaintiff's evidence consisted of the calculations he had made on jobs while serving as the company's manager. The "cost projection sheets" showed itemized amounts of all subcontracts, overhead expense, contingency reserves based on experience in the field, and profits which the company anticipated in executing contracts for the jobs that had been awarded the company. In main, the figures on the "cost projection sheets" were based on contracts entered into with subcontractors and materialmen for execution of the work. They were more than mere estimates, and they had been carefully reviewed and accepted by the officers of the defendant company. There was also evidence that plaintiff's experience of many years in preparing such cost projections on construction work had enabled him to come within one percent of accuracy.

Kenneth Minchew conceded that the company did not keep separate financial records of the income and expense relating to the construction contracts which are involved in this action for damages. He said that it was not possible to determine the actual profits of the company on those jobs because the figures were commingled with the financial affairs of three other companies operated by the Minchew interests, and some of the work on the jobs had not been completed. Kenneth also said that there were delays involved in completing some of the work, but he did not know whether the increased cost resulting from delay was offset by the "contingency reserves" provided for in the "cost projection sheets."

Defendant cannot complain that evidence of plaintiff's damages have not been measured with exactness and precision when its own method of bookkeeping made it impossible to ascertain the precise

damages suffered by the plaintiff. It is apparent from the record that the best evidence available was the "cost projection sheets."

When, as in the present case, a defendant is liable for some damages for breach of contract and no evidence is available to show the exact amount, the quantum may be fixed when the facts and circumstances are such as to permit an intelligent and probable estimate thereof. *Wyckoff Pipe & Creosoting Co.* v. *Saunders*, 175 Va. 512, 518-19, 9 S.E.2d 318, 321 (1940); *Krikorian* v. *Dailey*, 171 Va. 16, 30, 197 S.E. 442, 448 (1938).

Lastly, defendant contends that plaintiff's acceptance of the $1,000 check constituted an accord and satisfaction of his claim as a matter of law. We do not agree.

There can be no accord and satisfaction unless the debtor intends the offer as satisfaction of the demand, and such intention is clearly made known to the creditor and accepted by the creditor in accordance with the debtor's intention. " 'Both the giving and acceptance in satisfaction are thus essential requisites, and if either be lacking there can be no accord and satisfaction.' " *Virginia-Carolina Elec. Works* v. *Cooper, supra,* 192 Va. at 81, 63 S.E.2d at 719; *Kasco Mills, Inc.* v. *Ferebee,* 197 Va. 589, 594, 90 S.E.2d 866, 871 (1956).

Here the plaintiff told Minchew that he "was expecting more" than the $1,000 when he accepted the check. There was no understanding or agreement between the parties that the plaintiff was accepting the check in settlement of plaintiff's claims. Hence we cannot say, as a matter of law, that plaintiff accepted the $1,000 check in satisfaction of his claim against the company.

The accord and satisfaction issue was a factual question for the jury to determine, and the issue was presented to them by Instruction F, granted at the request of counsel for the defendant.

For the reasons stated, the judgment is

*Affirmed.*