**Johannes tenBRAAK et al., Appellees,**

v.

**WAFFLE SHOPS, INC., Appellant.**

No. 75–1998.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1976.

Decided Oct. 14, 1976.

---

14. *See* Restatement of Torts § 550 (1938).

Donald H. Clark, Virginia Beach, Va. (Clark, Steinhilber, Hofheimer & Stant, Virginia Beach, Va., on brief), for appellant.

L. David Lindauer, Portsmouth, Va., for appellee.

Before BOREMAN, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

On October 1, 1973, the appellant, Waffle Shops, Inc., and the appellees, doing business as a partnership known as Thursday, Ltd. (hereinafter the lessor), entered into a written lease of an unimproved parcel of land located in Portsmouth, Virginia. The lease provided that the property would be leased to Waffle Shops for a term of twenty years, commencing October 1, 1973, at an annual rental of Four Thousand Nine Hundred Eighty-six ($4,986) Dollars payable in equal monthly installments of $415.50. The stated intent of the parties, as recited in the executed lease, was that Waffle Shops was to construct a building, driveways, and a parking area on the premises, which would be used for the conduct of a restaurant business. The lease also detailed the responsibilities of both the lessor and the lessee in obtaining permits necessary for the construction of the restaurant facilities.

Waffle Shops paid the agreed monthly rent from October 1973 through April 1974, a period of seven months. On April 15, 1974, a representative of Waffle Shops met with the traffic engineer of the City of Portsmouth and requested a permit to "cut the curbs" on two streets adjoining the leased property in order to construct access driveways. The traffic engineer stated that he could not approve an entrance to the leased premises from either adjoining street because one street was closed to traffic and the single possible entrance-exit on the other would create unsafe traffic conditions. Indicating its belief that the curb cut permits would not be granted, Waffle Shops notified the lessor on April 18, 1974, that it considered the lease terminated as of March 31, 1974, because the necessary access permits could not be obtained. The restaurant facilities were never constructed and Waffle Shops made no more rental payments on the property.

Alleging diversity jurisdiction, the lessor filed a complaint in the district court on October 29, 1974, seeking to recover damages for Waffle Shops' alleged breach of the lease. Waffle Shops filed a counterclaim alleging that the lessor had fraudulently warranted and misrepresented to Waffle Shops that no governmental approvals, except those previously obtained from the Portsmouth Housing and Redevelop-

ment Authority, were required for Waffle Shops to use the leased premises in the intended manner. The district court, sitting without a jury, found that the lease was unlawfully breached by Waffle Shops because (1) under the terms of the lessor's warranty, the lessor was under no obligation to ensure that the city curb cut permits would be granted to Waffle Shops, and (2) even if such an obligation existed, the evidence did not conclusively indicate that the requested permits had been officially denied. The court dismissed Waffle Shops' counterclaim, and held that the lessor could recover an amount equalling the sum of all then unpaid past rentals plus the "present value" of all future rentals to become due during the remainder of the term of the lease.

On appeal, Waffle Shops challenges both the factual findings of the district court and its determination of damages. We affirm the district court's finding that Waffle Shops breached the lease without justification but we remand the case to the district court for a redetermination of damages.

In a civil case, findings of fact by a district court sitting without a jury are presumptively correct and cannot be set aside on appeal unless clearly erroneous. *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Crowe v. Cherokee Wonderland, Inc.,* 379 F.2d 51 (4 Cir. 1967); Fed.R.Civ.P. 52(a). In the instant case the district court examined the terms of the lease and heard testimony from the parties; on the basis of this evidence it found that the curb cut permit was not a "special use permit, variance or architectural approval" warranted by the lessor under the terms of the lease, but rather was one of a class of "necessary permits, licenses and governmental approvals for the erection of the building" the procurement of which was the lessee's responsibility. The court further found that even if the curb cut permit was within the

lessor's warranty, Waffle Shops would be liable for breaching the lease because there was insufficient proof that the request for the permits had been officially denied. Waffle Shops contends that both findings are erroneous and require reversal. Upon reviewing the record, however, we conclude that there was sufficient evidence to support the district court's finding that obtaining the curb cut permits was the responsibility of the lessee. Consequently, we hold that this finding is not clearly erroneous and therefore must be sustained. Furthermore, as the denial of a permit for which the lessee was responsible would not affect its obligations to the lessor, we find it unnecessary to consider the subsequent question of whether the lessee's application had been officially denied. Accordingly, we sustain the judgment of the district court insofar as it holds that Waffle Shops breached the lease without justification.

In allowing the lessor to recover for Waffle Shops' breach of the lease, the district court held that the lessor was entitled to recover not only the full value of all payments past due but also the present value of all future payments due during the full term of the lease. Waffle Shops contends that the award of future damages exceeded the recovery permitted by the pertinent Virginia law controlling this diversity action. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). We agree.

Examination of the record discloses that at the conclusion of the hearing the district judge stated orally his findings of fact and conclusions of law. In addressing the question of the lessor's recovery, the district court found that the Supreme Court of Appeals of Virginia had held in *Crowder v. Virginian Bank of Commerce,* 127 Va. 299, 103 S.E. 578 (1920), that upon a tenant's breach of his lease, his landlord had the right to hold him liable "under the contract."[1] The district court construed this to mean that in an action based upon a

1. In addition to *Crowder,* the district court cited *James v. Kibler's Adm'r,* 94 Va. 165, 26 S.E. 417 (1896), and *Hancock v. White Hall Tobacco Warehouse Co.,* 102 Va. 239, 46 S.E. 288

(1904), in which the Supreme Court of Appeals of Virginia had characterized leases as "contracts," as containing "the same language and similar explanations." We find these two

breach of a lease damages were recoverable as for breach of contract. It then attempted to determine the measure of damages recoverable under such a "contract," but concluded that there was no evidence to show the exact amount of the loss which the lessor would suffer. The court, however, was of the opinion that it could make an estimate of probable damages, and the recovery allowed was based upon this estimate.[2] We find that the measure of damages awarded by the district court is without precedent under Virginia law and exceeds the recovery allowed under any remedy afforded by Virginia law to a lessor whose tenant abandons leased property. Consequently, we reverse the judgment of damages and remand this case to the district court for further proceedings.

In Virginia, the remedies of a landlord in an action against his tenant are generally recognized, in the absence of express statutory or judicial modification, to be the same as the remedies permitted a landlord at common law. *Barrow v. Irving Trust Co.,* 68 F.2d 731 (2 Cir. 1934).[3] At common law, a landlord whose tenant either failed to pay rent or abandoned leased property was not entitled to recover future damages. *Barrow, supra.* If a tenant simply defaulted upon the payment of rent, at common law his landlord had no right even to re-enter the leased premises. Because the landlord could not re-enter, he could neither act to terminate the lease nor mitigate his lessee's damages; his only remedy was to initiate an action, on the basis of his contract, to recover the full amount of the

cases clearly distinguishable from both *Crowder* and the present case. *James* involved a breach by a *prospective* lessee, distinguishable by *Crowder* from cases such as the present one in which the relation of landlord-tenant actually had been created. *See* n. 3 *infra.* Although *Hancock* involved a breach occurring after the lease was entered into, the only question there considered by the Virginia court was whether damages could be recovered in multiple actions for breach of a covenant *other than a covenant to pay rent in installments.* As the instant case is an action to recover rent payable in installments, we find the statements in *Hancock* concerning divisibility of the lease agreement inapposite here. *See* n. 6 *infra.*

2. The district court found that under both Virginia and federal law a trial court could estimate damages for breach of contract. *Story Parchment Co. v. Paterson Co.,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Great Coastal Express, Inc. v. Int'l Bro. of Teamsters,* 511 F.2d 839 (4 Cir. 1975); *United Mine Workers v. Patton,* 211 F.2d 742 (4 Cir. 1954); *M & B Construction Co. v. Mitchell,* 213 Va. 755, 195 S.E.2d 873 (1973). We note that these cases allow such an estimate only when there is no evidence available to show the exact amount of damages which are recoverable under the law. In the instant case we hold, *infra,* that Virginia law clearly provides that the maximum recovery by a landlord upon abandonment by his tenant is limited to the amount of rent accrued either at the time he initiates his action or at the time of lessor's re-entry, if such has occurred. Furthermore, we find not only that there was sufficient evidence in the record to permit the district court to determine the exact amount of the accrued rental but also that the district court's judgment, based upon its esti-

mate, exceeds the maximum recovery allowed by Virginia law. Under these circumstances the measure of recovery allowed by the court clearly cannot be sustained.

3. In Virginia, the landlord's remedies in cases concerning breach of a contract *of* lease, in which the tenant had taken possession of the leased premises and abandoned them, have been held to differ from the lessor's remedies in cases concerning breach of a contract *to* lease, in which the lessee signs a contract to lease property in the future but refuses to take possession. If a contract *to* lease is breached prior to entry, the relation of landlord-tenant never exists and the breach is considered merely to be a breach of contract to which the landlord-tenant cases have no application. *James v. Kibler's Adm'r.,* 94 Va. 165, 26 S.E. 417 (1896); *accord, Penn. State Shopping Plazas v. Olive,* 202 Va. 862, 120 S.E.2d 372 (1961); *Branning Mfg. Co. v. Norfolk-Southern R.R.,* 138 Va. 43, 121 S.E. 74 (1924). Thus, a wrongful breach of a contract *to* lease is considered merely as a breach of contract governed by the principles of contract law, including both the requirement for mitigation of damages and the allowance of future damages. *See James v. Kibler's Adm'r., supra.* On the other hand, in the case of abandonment of a contract *of* lease, the Virginia courts have allowed the landlord to recover only those damages to which he is entitled under the law governing the relation of landlord and tenant, which we hold, *infra,* does not permit recovery of future damages. *Crowder v. Virginian Bank of Commerce, supra; see, also, Barrow v. Irving Trust Co.,* 68 F. 2d 731 (2 Cir. 1934); Annot., 21 A.L.R.3d 534, 572 (1968).

accrued rents. Annot., 28 A.L.R.2d 803 (1953).[4]

Although the landlord at common law had only a single remedy for his tenant's nonpayment of rent, jurisdictions which adhere to common law principles have generally recognized that he has an additional remedy in cases such as the present one, in which abandonment occurs.[5] The general rule is that upon abandonment by his tenant the landlord is permitted either to treat the abandonment simply as a default in the payment of rent, allowing him to continue to recover rents which fall due under the contract, or to consider the abandonment a surrender by the tenant, permitting him to re-enter the leased premises. If the landlord elects to keep the lease in effect and recover on the lease-contract, he is entitled to any rents which accrue during the remainder of the term but, if he elects to re-enter, his re-entry is deemed an acceptance of the tenant's surrender, and the lease is considered terminated by the mutual agreement of the parties. *See* Annot., 13 L.R.A. 398 (1908).

We note that the Virginia cases which consider a tenant's liability following abandonment have followed this general rule; thus, when a tenant abandons leased property during the term, the Supreme Court of Appeals of Virginia has held that the landlord is permitted, at his option, either (1) to refuse to accept the tenant's surrender, do nothing and sue for accrued rents,[6] or (2) to re-enter the premises and accept the tenant's surrender, thereby terminating the lease and releasing the tenant from further liability on the lease. *Crowder v. Virginian Bank of Commerce,* 127 Va. 299, 103 S.E. 578 (1920).[7]

Although the law of Virginia thus does not provide for recovery of future damages for the lessor's losses arising from the abandonment of a contract of lease, we find that the parties are not barred from providing for such a recovery through for-

4. Virginia has enacted statutes modifying the common law to permit re-entry by a landlord after his tenant's default in the payment of rent. Va.Code Ann. §§ 55–224, –225 (Repl.Vol. 1974). However, under Virginia law the re-entry statutes merely provide a right of re-entry and do not otherwise alter the rules of the common law in respect to the forfeiture of estates for nonpayment of rent. *Johnston v. Hargrove,* 81 Va. 118, 120 (1885).

5. As a general rule, an "abandonment" of a lease occurs when the lessee leaves the premises vacant with the avowed intention not to pay rent. *See, e. g., Kassan v. Stout,* 9 Cal.3d 39, 106 Cal.Rptr. 783, 507 P.2d 87 (1973); *Chancey v. Smith,* 25 W.Va. 404 (1885); Annot., 13 L.R.A. 398 (1908), *cited as authoritative in Crowder v. Virginian Bank of Commerce,* 127 Va. 299, 103 S.E. 578 (1920). Thus, two elements are necessary to show abandonment: (1) vacation of the premises, and (2) a clear intent not to be bound by the lease. Because there was uncontroverted evidence indicating that Waffle Shops not only refused to build upon or otherwise occupy the leased property but also expressly renounced the lease, we conclude that abandonment occurred.

6. As a general rule, an agreement to pay rent in installments is considered to be a divisible contract; thus, an action for rent not due at the commencement of a former action for rent is not barred by the former judgment. *See, e. g.,*

*Surety Realty Corp. v. Asmer,* 249 S.C. 114, 153 S.E.2d 125 (1967); Annot., 24 A.L.R. 885, 891 (1923). Although we have found no Virginia cases which discuss the question whether contracts for rental payments are divisible, we note that Virginia does follow the majority rule recognizing that *contracts* for installment payments are divisible, thereby permitting separate actions to be maintained to recover installment payments as they fall due. *Jones v. Morris Plan Bank of Portsmouth,* 168 Va. 284, 191 S.E. 608 (1937). In the absence of any indication by the Supreme Court of Appeals of Virginia that Virginia would not likewise follow the majority rule holding that actions for *installments of rent* are divisible, we conclude that the law of Virginia would not bar the lessor herein from initiating subsequent actions for rents which accrued after this complaint was filed.

7. Neither party has raised the question of whether the law of Virginia would permit a landlord, in the event of abandonment by his tenant, to re-enter for the limited purpose of re-letting the property on the tenant's account but it does appear that Virginia law would permit such a re-entry which would not operate to terminate the lease. *Hoster-Columbus Associated Breweries Co. v. Stagg Hotel Corp.,* 111 Va. 223, 68 S.E. 50 (1910).

feiture provisions in the lease.[8] Virginia law requires, however, that any such provisions for re-entry or forfeiture must be strictly construed. *Galvin v. Southern Hotel Corp.*, 154 F.2d 970 (4 Cir. 1946); *Johnston v. Hargrove*, 81 Va. 118 (1885).

In the instant case, the lease contains no contractual provision which specifically addresses the lessor's recovery upon abandonment. However, it does contain a re-entry provision which states that the lessor, upon meeting certain notice requirements, *may* re-enter either in the event of default by the tenant in the payment of rent or upon the breach of any affirmative covenant in the lease.[9] Strictly construing this provision, as required by Virginia law, we find that by stating that the lessor *may* re-enter, the contractual provision merely creates a *right* of re-entry when the tenant breaches a covenant but does not impose a duty upon the lessor to re-enter. The lessor's remedies under this provision are thus optional. Since there is no evidence in the record which indicates that the lessor has attempted to pursue any remedy available to him under this contractual provision and the parties have argued, both in the district court and on appeal, only for such relief as is permitted by the law of Virginia, we conclude that the lessor has not sought relief under this or any other contractually created right. Consequently, we hold that neither the re-entry provision nor any other contractual provision has been shown to affect the remedies available to the lessor under Virginia law.[10]

Thus, we hold that the lessor was here entitled to recover only those damages which are available under the Virginia law governing a landlord's recovery upon his tenant's abandonment. In such a case, the law of Virginia allows the lessor certain options; it may re-enter and terminate the lease, it may re-enter for the limited purpose of re-letting without terminating the lease, or it may refuse to re-enter and initiate an action for accrued rents. Since none of these remedies entitles the lessor to recover either future damages or rents accruing subsequent to the initiation of his action, the maximum amount recov-

---

**8.** It is well recognized, both at common law and under the law of Virginia, that parties to a contract of lease may modify their legal rights by provisions in the lease. *Johnston v. Hargrove*, 81 Va. 118 (1885); Annot., 28 A.L.R.2d 803, 806 (1953). But Virginia's statutory re-entry provisions (Va.Code §§ 55–224, –225) have no application when the parties provide by contract for re-entry upon default in the payment of rent. *Jabbour Bros. v. Hartsook*, 131 Va. 176, 108 S.E. 684 (Va.1921).

**9.** Paragraph 10 of the lease provides, in pertinent part:

If the Lessee shall fail to pay any installments of rent promptly on the day when the same shall become due and payable hereunder, and shall continue in default for a period of thirty (30) days after written notice thereof by Lessor, or if Lessee shall fail to promptly keep and perform any other affirmative covenant of this lease, strictly in accordance with the terms of this lease and shall continue in default for a period of thirty (30) days after written notice thereof by Lessor of default and demand of performance, then and in any event, and as often as any such event shall occur, Lessor may (a) Declare the said term ended, and enter into said premises demised, or any part thereof, either with or without process of law, and expel Lessee or any person occupying the same in or upon

said premises, using such force as may be necessary so to do, and so to repossess and enjoy said premises as in the Lessor's former estate; or (b) Re-let the premises applying said rent from the new tenant on this lease, and Lessee shall be responsible for no more than the balance that may be due, should a balance exist.

\* \* \* \* \* \*

**10.** Although a few jurisdictions have indicated that the mere existence of a re-entry provision in the lease places the landlord under a duty to re-enter and mitigate damages after the tenant's abandonment, we find that the majority of jurisdictions which have considered this question have rejected the suggestion that re-entry for the purpose of mitigating the tenant's damages is mandatory when the lease merely permits re-entry *at the landlord's option. See* Annot., 21 A.L.R.3d 534, 561 (1968). We have found no Virginia cases, and no cases have been cited in the briefs or called to our attention, which address this issue. In the absence of specific guidance by the Supreme Court of Appeals of Virginia we conclude that the Virginia courts would follow the majority rule, and thus would hold that the optional contractual re-entry provision of paragraph 10 of this lease has no limiting effect upon the lessor's legal remedies after abandonment.

erable by the lessor in this case is the accrued rent which was unpaid at the time the action was initiated.[11]

■■■ Although the lessor's maximum recovery is thus ascertainable, we find that the record does not indicate whether there has been re-entry by the lessor onto the leased premises, a determination which we view as prerequisite to a decision as to the exact remedy to which the lessor is entitled. Re-entry, however, is a question of fact under Virginia law, *Hoster-Columbus Associated Breweries Co. v. Stagg Hotel Corp.*, 111 Va. 223, 68 S.E. 50 (1910); *see* Annot., 61 A.L.R. 773 (1929), and the determination of such questions is the function of the district court. Accordingly, this case must be remanded for further factual determinations before the appropriate remedy can be ascertained.

We affirm the judgment of the district court insofar as it holds that Waffle Shops' breach was without justification, but we reverse the judgment awarding damages and remand the case to the district court for such further proceedings as are necessary to determine the proper measure of damages. Upon remand, the district court is directed to grant such relief as is available to the lessor under the law of Virginia, consistent with the views herein stated.

*Affirmed in part; Remanded with directions.*

---

11. The law of Virginia, which follows the general rule, requires that in an action to recover damages for the failure to make payments due under an *installment contract* the plaintiff is entitled to recover only those payments due, or past due, *when the action is commenced*. *Jones v. Morris Plan Bank of Portsmouth*, 168 Va. 284, 191 S.E. 608 (1937). A similar rule is generally held to apply to a landlord's action for the recovery of rent payable in installments. *See* Annot., 24 A.L.R. 885, 891 (1923); n. 6 *supra*. Although a plaintiff who seeks to recover installments due under a contract can either amend his complaint or initiate a second action to recover any installments which have fallen due since the commencement of the proceedings, there is no indication in the record that the lessor-plaintiff has done either in the instant case. In the absence of an amendment to its complaint, we conclude that the lessor's remedy remains fixed as that available to it at the time the action was commenced. Thus, if the lessor did not re-enter prior to the commencement of this action, it would be entitled to recover herein only those rents due *when the action was commenced*; but if re-entry had occurred prior to commencement of this action, lessor could recover only those rents which had accrued up to the time of re-entry.