346 S.E.2d 740

**CHARLESTON URBAN RENEWAL AUTHORITY, etc.**

v.

**Spyros STANLEY.**

No. 16499.

Supreme Court of Appeals of West Virginia.

Dec. 5, 1985.

Henry R. Glass, III, Chester Lovett, Lovett, Vaughan & Cooper, Charleston, for appellant.

Anthony G. Halkias, Charleston, for appellee.

NEELY, Chief Justice:

In August, 1978, Spyros Stanley and the Charleston Urban Renewal Authority ("CURA") entered into a written, month-to-month lease for premises located at 501–515 Summers Street in Charleston. Under the terms of this lease, the appellee, Mr. Stanley, agreed to pay the appellant CURA, $600.00 a month rent. He used the property as a parking lot.

In November, 1982, CURA exercised its prerogative under the lease and terminated Mr. Stanley's tenancy. CURA informed Mr. Stanley that if he failed to surrender possession of the premises by 2 January 1983 his continuing occupation would be construed as a tenancy from day-to-day at a rental rate of $150.00 per day. Mr. Stanley held over, and when CURA sued him for possession of the premises he filed a counterclaim alleging representations by CURA over a number of years that he would be able to continue to enjoy possession. In July, 1983, the circuit court held for CURA in its action for eviction and against Mr. Stanley on his counterclaim; that part of the proceedings is not before us. However, after the court's July order evicting Mr. Stanley the question of Mr. Stanley's liability to CURA for damages arising from his illegal retention of the premises remained to be decided.

In January, 1984 the circuit court took the issue of damages under advisement and upon the pleadings, legal memoranda, and a motion *in limine* by the appellee, which the court treated as a motion to dismiss, the circuit court dismissed the action on the grounds of accord and satisfaction and entered judgment in the favor of Mr. Stanley. CURA now appeals.

I

The record is sparse. Mr. Stanley never plead accord and satisfaction as an affirmative defense; however, he did introduce evidence that he had tendered to CURA the sum of $600.00 per month in one form or another for every month that he held over.

Mr. Stanley tendered checks to CURA in the following order:

| CHECK DATE | AMOUNT |
| --- | --- |
| January 3, 1983 | $150.00 |
| January 4, 1983 | $150.00 |
| January 5, 1983 | $150.00 |
| January 6, 1983 | $150.00 |
| February 20, 1983 | $600.00 |
| March 15, 1983 | $600.00 |
| April 20, 1983 | $600.00 |
| May 16, 1983 | $600.00 |
| June 20, 1983 | $600.00 |
| July 15, 1983 | $600.00 |

The front of the 6 January check bore the legend "January rent in full." Mr. Stanley contends that CURA scratched out the "in full" when they deposited the check. The checks for the subsequent months bear legends that state only the month to which they correspond—e.g., "April rent," "May rent," etc.

The circuit court made the following findings of fact and conclusions of law in its letter opinion:

"Further, defendant in support of its position of satisfaction and accord, alleges that the words "Jan. rent in full" appeared on the face of defendant's check dated "Jan. 5, 1983" and that plaintiff "scratched out" the words "in full." Plaintiff made no attempt to address this allegation in its reply memorandum and, therefore, the Court must accept this allegation as true. This, then, being the case, the Court finds that plaintiff knew full well the defendant tendered this check as payment in full and attempted to circumvent this intent by altering, perhaps illegally, the face of defendant's check. If such action by plaintiff did, in fact, take place (and as mentioned above, it was not refuted by plaintiff), this Court's sensibilities of fair play and morality are highly offended; such action having been taken by an agent of a public, tax-supported body."

The circuit court was impressed by the fact that on one check someone at CURA had scratched out the words "payment in full." The circuit court found that CURA's alterations indicated that someone at CURA knew that Mr. Stanley had tendered the check as a full payment. Consequently,

the circuit court held that the cashing of Mr. Stanley's checks constituted an accord and satisfaction.

## II

To show an accord and satisfaction, the person asserting the defense must prove three elements: (1) there must be some consideration to support an accord and satisfaction.[1] In this case, there can be little doubt that the claim was unliquidated. Litigation always carries the risk that the claimant will come up with less than he hopes. Accordingly, Mr. Stanley's tender of $600.00 cash per month was valid consideration for CURA to release its claim against him.

The second two elements of an accord and satisfaction are derived from the general contracts doctrine of offer and acceptance: (2) The debtor must offer the payment of consideration in full satisfaction of the disputed claim; and (3) the creditor must accept the consideration tendered with the knowledge that the debtor offered it only upon condition that the creditor accept the consideration in full satisfaction of the disputed claim or not at all. *M & B Constr. Co. v. Mitchell,* 213 Va. 755, 195 S.E.2d 873 (1973) (where there was no understanding or agreement between employer and employee that employee accepted employer's check for $1,000 in settlement of his claims under oral employment contract and employee told employer that he was expecting more than the $1,000 when he accepted the check in satisfaction of his claim against employer). It is in satisfying these final two elements that Mr. Stanley's defense falls short.

For the January rent, Mr. Stanley's inscription "January rent in full"

along with CURA's acceptance and cashing of the check is enough to satisfy these two elements and establish an accord and satisfaction. The great weight of authority in this country is that if money is tendered in full satisfaction of a disputed claim, and accepted with knowledge that such amount is tendered in full satisfaction and not in partial satisfaction, then the acceptance and use of the money constitutes an accord and satisfaction. Writing "payment in full" or some similar legend upon a check shows the offeror's intent. Obliterating such a legend demonstrates the acceptor's knowledge of the tender's condition. Williston is explicit on this subject in his treatise on contracts where he states:

> "It has been established that if a check bearing a notation indicating that it is offered in full settlement is delivered to the creditor, the retention and use of the check by the creditor constitutes an accord and satisfaction ... *he cannot avoid the dilemma of returning the check or keeping it in full satisfaction by erasing or obliterating the words which import complete satisfaction.*
>
> The fact that the creditor protests against accepting the tender in full payment will not prevent the transaction from becoming a good accord and satisfaction where the debtors still insist that it must be accepted in full payment or not at all."

15 S. Williston, *A Treatise on the Law of Contracts* § 1854 (3d ed. 1972). The debtor remains the master of his own offer. The creditor of an unliquidated claim must either accept or reject the debtor's offer; he is not free unilaterally to modify the debtor's original offer and then proceed to accept the offer so modified.

---

1. *Consumer Credit Co. of Waynesburg v. Bowers,* 143 W.Va. 748, 104 S.E.2d 869 (1958) (anything which is either a benefit to the creditor, or a detriment to the debtor, however slight, is sufficient to support an accord and satisfaction). An honest dispute or unliquidated claim, though not necessarily well-founded, may be the basis of an accord. *Owen v. Wade,* 185 Va. 118, 37 S.E.2d 759 (1946). The dispute need not rest upon factors arising from sound reasons. The debtor may be wrong in his contention; that he honestly believes in the correctness of his posi-

tion is enough. On the other hand, part payment of a liquidated claim will not support an accord and satisfaction. *Clark v. Sperry,* 125 W.Va. 718, 25 S.E.2d 870 (1943) (payment by a debtor and receipt by the creditor of a less sum than is due upon an undisputed liquidated demand is not "satisfaction" of the debt, although the creditor agrees to accept the payment as such, if there be no release under seal or no new consideration given as to the part left unpaid).

If a check is tendered bearing the words "payment in full" or some other words of similar purport, the payee may either accept the check and acknowledge the accord and satisfaction, or return the check to the payor. If the payee chooses the latter course of action he may continue to dispute the underlying claim. The common law rule may seem draconian, but it is not without reason. The "full payment" check has provided a method for both distraught debtors and aggrieved consumers to settle disputes without litigation. One commentator explains:

> ... Take the case of the charge customer who is billed for merchandise never received, or who has not been given credit for payments already made or merchandise returned. He writes to the creditor, but receives no answer, or he telephones and is promised attention—yet, the next month's bill repeats the incorrect charge and for good measure adds a "service charge" or interest. In the early days of automated billing, punch cards were commonly used, and the debtor could often attract human attention to his communication by folding, spindling, or mutilating the card. Alas, modern technology has developed the computer printout, which affords no such mechanical device to attract the attention of any human being, much less a responsible one, to the customer's communications.

The "full-payment" check has offered an appropriate response to these practices. A well-counseled customer would probably, in addition to inscribing "payment in full" conspicuously on the check, also staple the check to a letter in which he made clear that the dispute had not been resolved, that the check was specifically tendered as full payment, and that if the creditor did not wish to accept it as such he should return it and resolve the

matter in court. Such a communication will sometimes generate responsible attention and result in the resolution of the disagreement. If not, the same mindless procedures of the creditor that caused the customer's original frustration will result in the automatic deposit of the check. At that point, the customer will have most of the trumps for any further stages of the game.

The poetic justice in turning the creditor's unresponsiveness against him should not be casually discarded. While the charge-account problems of middle-class consumers are scarcely the most pressing in today's society, the full-payment check also offers an easy, inexpensive, and convenient method for effecting settlements in a wide range of types of disagreement between businessmen. Assuming the absence of bad faith, economic duress, or other factors that would permit the creditor to invalidate the settlement anyway, the device appears fair to the parties and good for commerce; it also reduces the need for litigation. [Footnotes omitted by the court]

Rosenthal, *Discord and Dissatisfaction: Section 1-207 of the Uniform Commercial Code*, 78 Colum.L.Rev. 48, 56–57 (1978). Not only is the "full payment" check rule of venerable origin and consistent with general contract law, but also it remains a commercially useful doctrine.[2] Accordingly, we see no reason to rewrite this area of the law.

But in the present case we are faced with thorny problems of application. Certainly, as the circuit court indicated, because one check had the words "payment in full" written on it, and these words were struck out by CURA which then cashed the check, there is *prima facie* evidence of the second and third elements of accord and

2. The full payment check rule has come under increasing assault. Several jurisdictions have held that U.C.C. § 1–207 (1972 ed.) (also numbered as *W.Va.Code* 46–1–207 [1963]) allows a creditor to accept payment without being bound by the conditions attached. *Horn Waterproofing Corp. v. Bushwick Iron & Steel Co., Inc.*, 66 N.Y.2d 321, 497 N.Y.S.2d 310, 488 N.E.2d 56 (1985). *See also* Annot., 37 A.L.R. 4th 358

(1985). Because the underlying dispute in this case involves a lease of real property, application of the Uniform Commercial Code to the dispute at hand would be inappropriate. However, in the future we may apply *W.Va.Code* 46–1–207 [1963] to a case that involves an underlying transaction that is within one of the substantive articles of the U.C.C. (e.g., the sale of goods under Article 2).

satisfaction; the act of scratching out Mr. Stanley's inscription indicates that there was some consciousness on the CURA'S part of Mr. Stanley's intent. Furthermore, the "full payment" check rule dictates that we treat the sequence of events as an accord and satisfaction as to the January rent. But, from the "January rent in full" inscription on the 6 January 1983 check, we cannot infer that all the subsequent checks were also tendered and *accepted* as full payments for each of the subsequent months. Because the "full payment" check rule is a harsh rule, it must be applied strictly and not liberally. The debtor must make it clear that the check that he sent is offered only on the condition that it is taken in full payment. 15 S. Williston, *A Treatise on the Law of Contracts* § 1856 n. 8 (3d ed. 1972). In Mr. Stanley's case, the full payment legend on one check is not enough for us to infer, as a matter of law, that the other checks were also tendered in full payment. The circuit court must decide whether checks tendered after January were offered and accepted as full satisfaction.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Kanawha County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BROTHERTON, Justice, dissenting:

I respectfully dissent to the Court's opinion in this case.

Mr. Stanley had leased the property in question from CURA for more than four years at the monthly rate of $600.00 when CURA terminated the lease. Mr. Stanley continued to make payments at the same rate for seven months after the lease was terminated. The majority of this Court held that an accord and satisfaction had been established as a matter of law only for the January payment.

The majority based their decision on the fact that Mr. Stanley had written "January rent in full" on the final January check. For the remaining six months, however, Mr. Stanley wrote only "February rent," "March rent," etc., and did not include the words "in full." The majority seems to find some magic in the words "in full" which allows them to conclude that an accord and satisfaction existed as a matter of law only where those words appeared. I see no such magic. When a check bears *some notation* that it is offered in full settlement of a claim, the retention and use of the check by the creditor constitutes an accord and satisfaction. 15 S. Williston, *A Treatise on the Law of Contracts* § 1854 (3d ed. 1972). It is not necessary that the check include words such as "payment in full" if some other evidence exists to show what the check is intended to cover. *See Mobley v. Fulton Roofing Company*, 173 Ga.App. 563, 564, 327 S.E.2d 540, 542 (1985).

I believe Mr. Stanley's intent was clear. The words "February rent," etc., indicated that the checks were offered in full settlement of the rental payments for the respective months. In addition, the words "in full" on the January check placed CURA on notice of Mr. Stanley's intent. CURA's acceptance and use of the February through July checks should constitute an accord and satisfaction as a matter of law for the amounts due for those months. Accordingly, I would affirm the judgment of the circuit court.