948 F.2d 1281
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MARGIE INTERNATIONAL TRADING COMPANY; Robert B. Green,
Plaintiffs-Appellants,
and
Great South Services, Incorporated, Plaintiff,
v.
Robert M. STEIN; Edward S. Stein; Arthur H. Stein;
Barbara S. Fischer; Robert M. Stein, as Fiduciary
under the Will of Jack Stein, Defendants-Appellees,
and
Pinkerton's Incorporated, Defendant.
MARGIE INTERNATIONAL TRADING COMPANY; Robert B. Green,
Plaintiffs-Appellees,
and
Great South Services, Incorporated, Plaintiff,
v.
Robert M. STEIN; Edward S. Stein; Arthur H. Stein;
Barbara S. Fischer; Robert M. Stein, as Fiduciary
under the Will of Jack Stein,
Defendants-Appellants,
and
Pinkerton's Incorporated, Defendant.
 Nos. 90-2180, 90-2181.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1991.
Decided Nov. 20, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., Senior District Judge. (CA-89-558-N)
 ARGUED: Richard Ivan Gulick, Norfolk, Va., for appellant.
 James A. Gorry, III, Taylor & Walker, P.C., Norfolk, Va., for appellees.
 E.D.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Green leased space in a warehouse owned by the Stein family. After he was evicted, Green brought this action against the Steins alleging (1) breach of lease, (2) interference with third-party contracts, and (3) injury to business reputation. The Steins counterclaimed for damages resulting from Green's default and contended that he had been locked out as a result of his own breach of the lease. After a jury trial, the Steins were awarded $39,578.18 in lost rent and attorneys' fees. Green was awarded $10,000 for repairs he had made while in possession of the warehouse. Both parties appeal. Finding no error, we affirm.
 
 I. Background
 
 2
 Robert Green, a New Jersey businessman, is the sole officer, director, and stockholder of Margie International Trading Company, the parent of Great South Services, Inc. In 1988, Great South was engaged in the cocoa bean business, operating out of leased warehouse space on Roberts Road in Norfolk, Virginia. Robert M. Stein, Edward S. Stein, Arthur H. Stein, Barbara S. Fischer, and the estate of Jack Stein (hereinafter, the "Steins") own a warehouse located at 2211-35 Barraud Avenue in Norfolk. Because his lease was soon to expire, Green approached the Steins in mid-1988, informing them that he was interested in purchasing the Barraud Avenue warehouse.
 
 
 3
 Although the Steins were interested, they told Green that they needed time to locate other property, because they wanted to structure a sale to gain income tax advantages.
 
 
 4
 On August 3, 1988, the parties entered into two agreements, jointly prepared by their counsel. In one, a lease agreement, they agreed that Green would lease space in the Barraud Avenue warehouse. In the other, they agreed to the sale and purchase of the property with a closing date to be set on or before January 15, 1990. By its terms, the lease would terminate when the property was sold to Green in accordance with the purchase and sale agreement.
 
 
 5
 Several months into the lease, the Steins became distressed with Green's performance under the lease. The rent payment for May was past due. Green's check for the gas bill at the warehouse had bounced, and two mechanics' liens had been filed, encumbering the property. On May 3, 1989, the Steins' attorney informed Green by letter that the Steins considered Green to be in default. After Green failed to adequately respond to the May 3 letter, the Steins informed him on May 19, 1989, that the lease was terminated and advised him to vacate the premises.
 
 
 6
 Notwithstanding the notice to vacate, the parties attempted to resolve their difficulties. During the subsequent negotiations, Green continued to operate out of the warehouse, complying with the Steins' requirement for the payment of May and June rent plus a late payment fee. The payments were wired to the Steins' attorney on June 6, 1989.
 
 
 7
 After a series of meetings, negotiations between the parties broke down. On June 13, 1989, the Steins changed the locks and posted guards at the warehouse Green's employees were allowed limited access to the property until June 16, 1989. More negotiations ensued, but a new lease did not result. Ultimately, the Steins allowed Green to remain on the premises until July 31, 1989, giving him time to relocate his business. Green vacated the warehouse sometime in mid-July.
 
 
 8
 The Steins set a closing date on the purchase and sale agreement. However, on September 6, 1989, after Green failed to appear for the closing, the Steins declared him to be in default on the purchase and sale agreement. They ultimately relet the premises.
 
 II. The Proceedings Below
 
 9
 On July 28, 1989, Green and his company, Great South Services, Inc.,[1] filed a complaint against the Steins and Pinkerton's, Inc.,[2] containing three counts. Count I sought damages for breach of a lease agreement, Count II sought damages for interference with third-party contracts, and Count III sought damages for injury to business reputation. The Steins filed a counterclaim demanding damages resulting from breach of the lease agreement by Green.
 
 
 10
 At the conclusion of the evidence, the district court dismissed all three counts of Green's complaint. It submitted to the jury issues of whether Green was entitled to recover for the repairs and improvements to the warehouse (on a theory of unjust enrichment or quasi-contract)[3] and whether the Steins were entitled to recover on their counterclaim. The jury rendered a verdict for the Steins in the amount of $39,578.18 for lost rent and attorneys' fees. It awarded Green $10,000 for repairs and $40,000 for the improvements he had added.
 
 
 11
 The district court denied Green's motion for j.n.o.v. with respect to the award of lost rent and attorneys' fees. It granted the Steins' motion for j.n.o.v. with respect to the $40,000 award for improvements but denied their motion with respect to the $10,000 award for repairs. This appeal followed.
 
 III
 
 12
 The parties challenge most of the dispositive rulings of the district court. Green attacks the district court's dismissal of Count I of his complaint (the breach of lease claim) and its denial of his motion for j.n.o.v. with respect to the awards of future rent and attorneys' fees, as well as the grant of the Steins' motion for j.n.o.v. as to improvements. The Steins, in turn, challenge the district court's denial of their motion for j.n.o.v. with respect to repairs. We review each of these issues in turn.
 
 
 13
 A. Dismissal of Count I of Green's Complaint
 
 
 14
 Green's theory on appeal is that, although the lease was terminated, the Steins' acceptance of rent for the months of May and June created a month-to-month tenancy or, alternatively, a tenancy at will, and that the Steins were therefore required to give notice before they could retake the premises.[4] We disagree with both contentions because there is simply no evidence in the record to support either conclusion. As the opinion of the district court indicates, the numerous letters between the Steins and Green make clear that neither party understood that the Steins' acceptance of the rent payment would create a tenancy at will or a month-to-month tenancy. As evidenced by letters between counsel on May 24 and May 31, 1989, both parties understood that acceptance of the payment by the Steins would not prejudice the Steins' rights under the terminated lease.
 
 
 15
 B. The District Court's Denial of Green's Motion for J.N.O.V.
 
 1. Future Rents
 
 16
 Green cites tenBraak v. Waffle Shops, Inc., 542 F.2d 919 (4th Cir.1976), for the proposition that a landlord who elects to re-enter the premises upon breach of a lease terminates the lease and limits his recovery to the amount of rent accrued. While this is an accurate statement of the general rule in Virginia, the parties in this case elected to contract on different terms, as was their right. "It is well recognized, both at common law and under the law of Virginia, that parties to a contract of lease may modify their legal rights by provisions in the lease." tenBraak, 542 F.2d at 925 n. 8. In this case, Green and the Steins agreed in the lease agreement that "[n]o such termination of this Lease nor recovering possession of the demised premises, however, shall deprive Landlord of any action or remedy against Tenant for possession, rent (accrued or to accrue) or damages...." Therefore, the district court properly refused Green's motion for j.n.o.v. concerning future rent.[5]
 
 2. Attorneys' Fees
 
 17
 Green argues that because there were no past due rents at the time of the lockout, no attorneys' fees were incurred by the Steins for the collection of delinquent rents. The pertinent provision in the lease agreement stated that "[t]enant further agrees to pay ... any and all attorneys' fees and court costs incurred in connection with the collection of delinquent rents and all other sums due the Landlord under this lease." We must reject Green's argument because the contract provides for attorneys' fees incurred in collection of "all other sums due the landlord under this lease" and because the argument fails to consider that substantial attorneys' fees were incurred by the Steins before the lockout while the May rent was unpaid.
 
 
 18
 C. The District Court's Grant of the Steins' Motion for J.N.O.V. With Respect to Improvements
 
 
 19
 Paragraph 24 of the lease states that all improvements become the property of the landlord upon termination of the lease. In light of this provision and the principle that the law will not imply a quasicontract where there is an express contract absent fraud or undue influence, the district court held that it had erred in submitting the issue to the jury, and granted the defendants' motion for j.n.o.v. as to the award of improvements. On appeal, Green argues that he should be entitled to the value of the improvements because both parties expected that he would ultimately own the property. Again, we disagree. While both parties intended for Green to purchase the warehouse, the terms of their agreements show that they were aware of the risk that the lease would be terminated and that the sale might not be consummated. Should those events occur, the risk of loss of the value of improvements was to fall upon Green. The parties, of course, were represented by counsel, the negotiations were at arm's length, and there is no evidence of fraud or undue influence.
 
 
 20
 D. The District Court's Denial of the Steins' Motion for J.N.O.V. with Respect to Repairs
 
 
 21
 In denying j.n.o.v. with respect to repairs, the district court held that the award of the value of repairs was appropriate because the Steins had an express contractual obligation to make them. On appeal, the Steins admit that they were responsible for repairs under the terms of the purchase agreement, but claim that this duty did not arise until the closing of the sale of the warehouse. The relevant provision in the purchase agreement provides otherwise:
 
 
 22
 Notwithstanding the foregoing, Seller agrees to perform or cause Legum Furniture Corporation to perform the obligations of Legum Furniture Corporation to make certain repairs to the warehouse in accordance with the Legum Lease and the letter from Robert M. Stein to Harry Weisberg, dated October 16, 1987 (included in Exhibit F) or to cause such repairs to be made.
 
 
 23
 Nothing in this language makes this promise of the Steins conditioned upon closing the sale. In our view, therefore, the district court correctly denied the motion for j.n.o.v. on the award for repairs.
 
 
 24
 For the reasons stated above, the decision of the district court is affirmed.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 Margie International Trading Company has subsequently been substituted for Great South Services, Inc., in these proceedings. Green and Margie submitted the same brief and were represented at oral argument by the same counsel. They will be collectively referred to as "Green."
 
 
 [2]
 Pinkerton's was hired by the Steins to provide guards at the warehouse. Pinkerton's and Green have settled their dispute; consequently, Pinkerton's is no longer a party to these proceedings
 
 
 [3]
 Without objection, evidence had been presented relating to these theories even though they had not been raised in the complaint
 
 
 [4]
 Green cites in support a decision of the Virginia Supreme Court of Appeals, Warehouse Distributors, Inc. v. Prudential Storage and Van Corp., 208 Va. 784, 161 S.E.2d 86 (1968). In Warehouse Distributors, the Virginia Supreme Court of Appeals stated that the acceptance of rent after the expiration of a lease created a tenancy at will. However, in determining the relationship between the parties in Warehouse Distributors, the court looked to correspondence between the parties to determine their intentions. A review of the correspondence between the parties in the case sub judice indicates that the payment by Green was merely a precondition to negotiations for a new agreement and that the parties did not intend that the payment would create a new tenancy
 
 
 [5]
 Green argues that Galvin v. Southern Hotel Corp., 154 F.2d 970 (4th Cir.1946), precludes us from interpreting the lease to permit recovery for future rent. In Galvin, we declined to enforce a forfeiture provision in a lease, holding that enforcement on the facts of that case would be unconscionable. We see nothing unconscionable here in allowing the Steins to recover for a few months of future rent